CECIL BROWN, Defendant in Error, *vs.* THE ILLINOIS TERMINAL COMPANY, Plaintiff in Error.

*Opinion filed December 16, 1925—Rehearing denied Feb. 3, 1926.*

1. NEGLIGENCE—*when question of willful negligence·is for the jury.* Whether an injury is the result of willful and wanton conduct is a question of fact, to be determined by considering all the evidence, unless the court is able to decide, as a matter of law, that there is no evidence tending to prove the charge of willfulness and wantonness.

2. SAME—*what constitutes willful or wanton negligence.* For an injury to have resulted from willful or wanton negligence it must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care; but ill-will is not a necessary element.

3. SAME—*when judgment of Appellate Court is conclusive.* In an action against a railroad company for personal injuries to the plaintiff, the judgment of the Appellate Court affirming a judgment for the plaintiff is conclusive on the questions as to the speed of the train and as to whether any signals were given.

4. SAME—*when the court may refuse to direct verdict against counts charging willfulness and wantonness.* In an action against a terminal railroad company for personal injuries to a truck driver, who was struck by the defendant's train during one of his many trips across the track in hauling materials for the construction of

a hard road, the court may refuse to direct a verdict against counts charging willfulness and wantonness, where there is evidence that the defendant's engineer saw the truck approaching the track at the crossing and knew its destination but did not slacken the speed of his train or give sufficient warning of the train's approach.

5. RAILROADS—*whether a carrier is engaged in interstate commerce depends upon the facts.* Whether the business of a carrier is interstate or intrastate commerce depends upon the facts, and if the evidence is such that reasonable minds might reach different conclusions as to whether a defendant carrier and an injured employee were engaged in intrastate or interstate commerce the question is one for the jury to decide.

6. SAME—*when empty car is transported in interstate commerce.* An empty tank car being returned from a destination beyond the boundaries of the State is transported in interstate commerce, and the fact that at the time of an accident it is being hauled by a terminal railroad company to the plant of the shipper located on the terminal railroad, which is wholly within this State, after having been stored for two days in the terminal company's yards, does not take the car out of interstate commerce, as its detention in the yards to await the orders of the shipper is but a temporary interruption in the return journey to the shipper.

7. SAME—*what testimony on question of interstate commerce is not admissible.* On the question whether an empty car being returned to an Illinois shipper from beyond the boundaries of the State was in interstate commerce when being hauled from a terminal company's yards within the State to the shipper, the court may refuse to permit the shipper to testify that he regarded the return journey completed when the car was delivered to the terminal company's yards, as such testimony tends to take from the jury the question of fact whether the car was in interstate commerce at the time.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding.

E. J. VERLIE, and H. S. BAKER, for plaintiff in error.

C. E. POPE, and H. F. DRIEMEYER, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Defendant in error (hereafter called plaintiff) sued plaintiff in error (hereafter referred to as defendant) for a personal injury caused by an engine and car of defendant striking the plaintiff while he was driving a truck over a crossing of a public highway with defendant's railroad.

Defendant's railroad, as its name indicates, is a short line, approximately twenty-five miles long, wholly in Madison county, serving industries by delivering loaded cars from them to connecting carriers and delivering empty cars from connecting carriers to the industries. The Young & Dent Construction Company was building a hard road in Madison county. Materials of rock and sand were delivered to a loading bin approximately twenty-five feet north of defendant's railroad track and sixty or seventy feet east of where the public highway crosses the tracks. Plaintiff was employed by the Young & Dent Construction Company and was engaged in hauling materials from the loading bin to the place where they were needed, south of defendant's track, in constructing the hard road. The material was hauled in Ford trucks, and they were driven from the loading bin to the highway crossing parallel to the railroad. Plaintiff loaded his truck at the bin, drove west to the public road and turned south to cross defendant's tracks. The White Star Refining Company has a plant on the south side of defendant's railroad, about 1000 feet west of the crossing. About 1500 feet east of the crossing defendant has storage yards and tracks, called Roxana yards. October 28, 1922, an engine of defendant was pushing an empty oil tank car of the White Star Refining Company in front of it, west toward the White Star plant. The train struck plaintiff on the crossing, wrecking the truck and severely injuring him. One arm was run over by the train and had to be amputated.

The declaration consisted of three original and one additional count. Two counts charged defendant with willful-

ness and wantonness in operating the train and causing the injury. One count charged general negligence in the operation of the train and one charged a failure to ring a bell or sound a whistle. Each of the counts charged defendant was engaged in interstate commerce. Defendant pleaded the general issue, and a stipulation was entered into that any evidence admissible under special pleas, properly pleaded, might be introduced. There was a trial by jury and a verdict and judgment in favor of plaintiff, assessing his damages at $15,000. On appeal to the Appellate Court that court required a *remittitur* to be filed of $3000 and affirmed the judgment for $12,000. This court granted a writ of *certiorari.*

The errors assigned and urged are, that the court erred in overruling defendant's motion to direct a verdict as to the counts charging willfulness and wantonness in the management of the train; that the proof showed plaintiff was guilty of contributory negligence; that the court erred in excluding evidence offered by defendant to prove that at the time of the accident it was engaged in intrastate commerce; and that the court erred in refusing defendant's 11th, 13th and 14th instructions.

There was no obstruction to the view of the train coming from the east, where plaintiff loaded his truck and drove onto the track, nor any obstruction to the view of plaintiff while doing so, from the trainmen operating the train. The engineer testified he saw plaintiff and his truck about 100 feet east of the crossing. The truck was going west, parallel to the track. He saw it make the turn toward the track when it reached the highway and saw the driver look over his shoulder just before he made the turn. Witness did not slacken the speed of the train, as plaintiff appeared to be intending to stop. When the engineer discovered he was not going to stop he set the brakes, but was so close to the crossing that it was too late. He was about thirty feet from the crossing when he set the brakes. When

the truck reached the highway crossing the railroad it was
fifteen or twenty feet north of the track and turned south
to pass over the crossing.

Plaintiff's evidence was that the driveway from the load-
ing bin to the highway was soft and the trucks had cut
deep ruts in the sand, which had to be followed to move
with the load.   Just before the truck reached the highway
it had to turn to the right around a telephone pole before
going on the highway.  His attention was directed to his
truck and the place he had to drive it to keep it moving,
and he testified he did not see any train or hear any signals
until it was close onto him.   His front wheels were on the
railroad track when he first saw it.   He did not stop from
the time he started from the loading bin until he got on the
railroad track.   He testified no bell was ringing or whistle
sounding.   Before he started with his load he looked east,
and no train was in sight.

There was some contradiction in the testimony as to the
speed of the train and as to the signals.   Plaintiff's wit-
nesses placed the speed at about twenty-five miles an hour,
while defendant's placed it at fifteen.   Plaintiff's witnesses
heard no signal of bell or whistle before the train was very
close to the crossing, when, one witness testified, the whistle
was sounded.   Defendant's witnesses testified the bell was
ringing continuously from a point 1500 feet east of the
crossing and that the whistle was sounded.

While this is a brief outline of the evidence and situa-
tion, we think it sufficient to present the question raised by
defendant that the court erroneously denied its motion to
direct a verdict as to the two counts charging that the in-
jury was the result of the willful and wanton conduct of
defendant.   It has been frequently said by this and other
courts that whether an injury is the result of willful and
wanton conduct is a question of fact, to be determined by
the jury from all the evidence.   Where there is no evidence
tending to support the charge of willful and wanton conduct

there is no question of fact to submit to a jury, and the
motion to direct a verdict on those counts would present a
question of law for the court to decide.   Courts have recog-
nized the difficulty of accurately stating under what circum-
stances a defendant may be held guilty of willful and wan-
ton misconduct in causing an injury.   Such conduct imports
consciousness that an injury may probably result from the
act done and a reckless disregard of the consequences.   Ill-
will is not a necessary element to establish the charge.
Plaintiff and defendant had a legal right to pass over the
highway crossing, and each was required, in doing so, to
observe due regard for the legal right of the other.   A will-
ful or wanton injury must have been intentional or the act
must have been committed under circumstances exhibiting
a reckless disregard for the safety of others, such as a fail-
ure, after knowledge of the impending danger, to exercise
ordinary care to prevent it, or a failure to discover the dan-
ger through recklessness or carelessness when it could have
been discovered by the exercise of ordinary care.   (*Lake
Shore and Michigan Southern Railway Co.* v. *Bodemer,*
139 Ill. 596; *Heidenreich* v. *Bremner,* 260 id. 439; *Illi-
nois Central Railroad Co.* v. *Leiner,* 202 id. 624.)   It is
true, the evidence as to the speed of the train and as to
whether any signals were given is conflicting, but the judg-
ment of the Appellate Court is conclusive upon those ques-
tions.   The evidence shows the public road north of the
crossing was closed, and the engineer must have known,
when he saw plaintiff driving a loaded truck toward the
crossing, that he was obliged to go south over the tracks
when he reached the highway, but the train continued with-
out slackening its speed or giving any warning until it was
practically upon the crossing, and it was then too late to
avoid a collision with the truck.   The conductor testified he
was on the tank car, which was in front of the engine, but
that he did not see plaintiff until he was on the track.   He
said he was looking at the highway south of the crossing,

as north of the crossing the road was closed. As we understand the evidence, the only persons using the crossing at the time of the accident were the contractors building the public road and their employees. Defendant knew the material for constructing the road had been unloaded on the north side of its track and near thereto, and that it had to be hauled over the crossing to the place where it was being used in constructing the road. The situation then was, that defendant's servants in charge of the train knew of the use of the crossing by trucks hauling material for use in building the public road. The engineer saw the plaintiff approaching the road, with his back to the east, until he turned south on the crossing, but assuming plaintiff would stop before reaching the track neither slackened speed nor sounded a warning, and the conductor, who was on the oil tank car, says he never saw plaintiff until he was on the track. Plaintiff was only a few feet from the railroad track when he drove on the highway. The engineer saw him before he reached the highway and must have known he could not pass over the railroad track before the train arrived at the crossing. He assumed plaintiff would stop until the train had passed before passing over the track. Plaintiff should have done so if he was warned or knew of the approaching train, but it was the duty of defendant's servants to give warning of the train's approach to the crossing by ringing the bell or blowing the whistle. That plaintiff ought to have known of the approach of the train did not relieve defendant of the duty of warning him of its approach. Under the decisions of this court, whether the injury was the result of the willful and wanton conduct of defendant was, under all the evidence, a question of fact for the jury, and the court did not err in refusing to direct a verdict as to the counts charging willfulness and wantonness. In *Chicago, Burlington and Quincy Railroad Co.* v. *Murowski,* 179 Ill. 77, the court said whether failure to ring a bell or sound a whistle before starting a train within the

city limits, in violation of the statute or an ordinance, is willful or wanton, is a question of fact for the jury, and it is not the province of a court to say, as a matter of law, that the omission was not willful. Defendant's railroad had only a few miles of track, wholly in Madison county. Its business was to receive loaded cars from industries along its line and deliver them to a connecting carrier for shipment to destinations, and also to receive and deliver empty cars consigned to the industries it served. It therefore did not run trains on regular schedule, which would give some notice to the public.

We do not think that under all the circumstances shown by the proof the court would have been warranted in deciding, as a matter of law, that there was no evidence tending to prove the charge of willfulness and wantonness. If we are correct in this conclusion it is unnecessary to discuss the question argued in the briefs whether plaintiff was guilty of contributory negligence.

The declaration alleged defendant was at the time of plaintiff's injury engaged in interstate commerce. The car which was being pushed in front of the engine at the time was an oil tank car and was owned by the White Star Refining Company, its plant being located at Wood River, Illinois, on defendant's line of railroad. It was loaded at the White Star plant October 2, 1922, delivered to defendant at the refinery and billed to the consignee at Detroit, Michigan. Defendant delivered the car to the Toledo, St. Louis and Western Railroad Company, which carrier, and connecting lines, transported it to Detroit. After being unloaded the empty car was billed from Detroit to the White Star Refining Company at Wood River, and October 26 was delivered to defendant by the Toledo, St. Louis and Western Railroad Company. The same day defendant took the car to Roxana, on its line, where it has a yard and storage tracks. It remained there till October 28, and on that day, while being transported to the White Star Refining

Company's plant at Wood River, the injury occurred. It was stipulated that either party might offer any competent evidence on the question whether at the time of plaintiff's injury the car was being moved in interstate or intrastate commerce.

Defendant contends that at the time of the accident the car was being moved in intrastate commerce. If it was, then plaintiff could not maintain his action against defendant, and defendant offered to prove by the White Star Refining Company's manager that it is served by no other road than defendant; that the company has not sufficient tracks to store or take care of all the empty cars it owns; that by reason of a custom existing between defendant and the White Star Company, no matter how that company's cars were billed, when received by defendant they were delivered to its storage tracks at Roxana; that each morning defendant's train dispatcher telephoned the White Star Company stating the different cars belonging to it defendant had on its storage tracks and asking instructions about their delivery, and that the placing of empty cars of the White Star Company on defendant's storage tracks at Roxana was regarded by that company as a delivery of the cars; that no additional charge was made for that service and no demurrage charged; that empty tank cars are often held in the storage yards a month, and no car has ever been immediately delivered to that company after it was received; that the White Star Company desired that custom to continue, because of its inability to store on its tracks all of its tank cars. The court refused to admit the testimony, and this ruling is assigned as error.

It is insisted by defendant that under the facts stipulated and those offered to be proved defendant was at the time of the injury engaged in intrastate commerce. A carrier may at one time be engaged in intrastate commerce and at another in interstate commerce. Whether the business is interstate or intrastate commerce depends upon the facts.

If the evidence is such that reasonable minds might reach different conclusions as to whether the defendant and an injured employee were engaged in intrastate or interstate commerce it is a question for the jury to decide. (*Pennsylvania Co.* v. *Donat,* 239 U. S. 50; 1 Roberts on Federal Liability of Carriers, sec. 461.) Elliott, in his work on Railroads, (vol. 4, sec. 2290,) says custom frequently has an important influence in determining the place and manner of delivery; that a general custom usually becomes part of the contract and governs the place and manner of delivery. It is the contention of defendant that if the court had permitted the offered proof it would have been his duty to have held, as a matter of law, that the train movement at the time of the accident was an intrastate movement, and relies' upon *Chicago, Burlington and Quincy Railroad Co.* v. *Harrington,* 241 U. S. 177, and *Lehigh Valley Railroad Co.* v. *Barlow,* 244 id. 183. It would have been competent to prove a general custom in determining the place and manner of delivery of the car to the White Star Company, but assuming the offered proof, so far as competent, had been admitted, it would merely have shown the White Star Company did not have at its plant sufficient tracks upon which to store all its empty cars, and the custom was that when defendant received a car billed from another State to the White Star Company at Wood River, the car was placed in the Roxana yards of defendant until it was notified to proceed to complete the movement of the car to its destination at Wood River. Placing the car in the Roxana yards till the consignee could receive it on the tracks at its plant was a temporary interruption in its transportation to place of destination and did not take it out of interstate commerce. (*Gehan* v. *New York Central Railroad Co.* 199 N. Y. Sup. 847; *St. Louis, San Francisco and Texas Railway Co.* v. *Seale,* 229 U. S. 156.) The car was billed from Detroit, Michigan, to the White Star Company at Wood River, Illinois, and its delivery to the company at that place was nec-

essary in order that it might be used. An arrangement or custom to have defendant hold the car in its Roxana yards until notified the consignee was ready to have the journey completed could not have the effect of terminating the interstate movement at Roxana and render the movement from that place to its destination intrastate commerce. The offer of proof by defendant which the court denied proposed to prove by the manager of the White Star Company that the delivery of the car on defendant's tracks at Roxana was regarded by that company as a delivery of the car. We think that part of the offer was incompetent and was properly denied. It would have permitted the witness to state what the company deemed the effect and result of the custom and would have invaded the province of the jury. The facts as to the existence of the custom may or may not be sufficient to determine the time and place of delivery of a car, but that is a question of fact for the jury to determine, and a witness cannot be permitted to state whether he regarded delivery completed when the car was placed somewhere else than the place to which it was shipped, at which place, only, could it be loaded by the consignee for shipment. Even if the witness had been permitted to testify to his conclusion from the custom, it would not, in our view, have altered the situation but would still have left it a question for the jury to determine. Conceding defendant had proved all it offered to prove, the court would not have been justified in holding, as a matter of law, that the car at the time of the injury was engaged in intrastate commerce.

We do not think the *Harrington* and *Barlow cases, supra,* referred to by defendant, are conclusive of this question, as contended. In the *Harrington case* the railroad company had transported coal from another State consigned to it for its own use. On arrival the car containing the coal was placed on a storage track until required for use. When that time arrived the car was moved from the storage track to chutes or bins to be unloaded to supply engines as needed,

some of which were engaged in interstate commerce and some in intrastate commerce. Harrington, a switchman employed by the railroad, was killed while the car was being so moved. In the *Barlow case* the facts were almost identical. Barlow, a switchman employed by the railroad, was injured while moving coal shipped from another State to the railroad company and stored on a side-track until it was required to be unloaded for use. Barlow was injured while moving the car from the side-track to the place for unloading. In both those cases the coal belonged to the railroads over which it was shipped and was for their own use. The Supreme Court held that when the cars arrived at their destination and were received and placed on a storage or sidetrack until they were to be unloaded the interstate movement ended and the subsequent movement for the purpose of unloading was an intrastate movement. When an empty tank car is shipped to its owner's plant in another State, a switchman of a terminal railroad company, in moving the car over the terminal railroad to its destination, is engaged in interstate commerce, and recovery for an injury under the Workmen's Compensation act is precluded. (*O'Neill* v. *Sioux City Railway Co.* (Iowa) 186 N. W. 633. See, also, *Hester* v. *East Tennessee and W. N. C. Railroad Co.* 254 Fed. 787; *St. Louis, San Francisco and Texas Railway Co.* v. *Seale, supra.*) Unless the interstate movement of the car had ended when it was placed upon defendant's track at Roxana it did not end until placed on the track of the White Star Company at Wood River. While some of defendant's offer was admissible, its rejection was not, in the view we take of the case, prejudicial error, for, as we have said, it could not, in our judgment, have authorized the conclusion, as a matter of law, that the car was in intrastate traffic at the time of the injury.

Defendant insists the court erred in refusing instructions 11, 13 and 14 asked by it. The court marked instruction 11, "Refused, as containing elements likely to mislead

319–22

the jury." It told the jury, in substance, that the fact that defendant sometimes engaged in interstate commerce did not mean that every movement on its road was of that character; that unless they believed from the evidence that at the time of the injury defendant was actually transporting persons or property from one State to another, or doing an act so directly connected with interstate commerce as to be a part of it, they should find defendant was engaged in intrastate commerce and the verdict should be not guilty. As defendant's railroad was wholly in this State, we agree with the court that in the form the instruction was asked it was likely to be misunderstood by the jury and be misleading. Instruction 13 defined interstate commerce. Instruction 14 defined intrastate commerce, and further told the jury that if they found from the evidence that the movement of defendant's train at the time of the injury had no direct relation to the transportation of persons or property from one State to another, then the movement was intrastate and the verdict should be not guilty. The court marked both instructions refused "because not based upon and contingent upon the finding of a specific fact to which the terms 'interstate' and 'intrastate' are applied." Instruction 13 is a statement in abstract form of a correct proposition of law, but the latter part is subject to the same objection as instruction 11. The court, at plaintiff's request, instructed the jury that if the tank car was shipped from Detroit, Michigan, billed to the White Star Refining Company at Wood River, Illinois, and that it had not completed its journey at the time of the injury but was being moved to Wood River under the billing to that place, then it was an interstate movement. We do not think defendant was prejudiced by the failure of the court to give instruction 13, and we are of opinion there is no error in the record which would justify a reversal of the judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*