Genevieve Reed, a Minor, by Newton A. Reed, her Father and Next Friend, Appellee, v. Robert Zellers, Appellant.

Gen. No. 8,766.

Opinion filed October 13, 1933. Rehearing denied January 4, 1934.

HARRY I. HANNAH, for appellant.

DONALD B. CRAIG, JAMES W. CRAIG, JR., FRED H. KELLY and CRAIG VAN METER, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This action was brought by the plaintiff, Genevieve Reed, a minor, by Newton A. Reed, her father and guardian, to recover damages for injuries received by her in an automobile accident, caused by the wilful and wanton conduct of the appellant, Robert Zellers, as claimed by her. Appellee recovered a judgment for $2,500, and this case is here on appeal from said judgment.

The declaration consists of two original and two additional counts. In the first count it is alleged in substance that appellee was riding in the automobile of appellant at his invitation and as his guest without payment, and which was being driven by him in the nighttime in a northeasterly direction on State Route No. 25, a paved public highway, at and near the Village of Galton, at which time and place there was a dense fog through which the light of said automobile pene-

trated but a few feet; that the paved portion of said highway was wet and slippery; and that a certain other motor vehicle backed out into the paved portion thereof and was slowly moving or standing thereon; that the defendant, with the knowledge of said dense fog and the fact that he could only see a few feet ahead, and with the knowledge of the wet and slippery condition of the pavement, and being conscious that his conduct would naturally and probably result in injury to others, particularly the passengers of said automobile and with an entire absence of care for the life, person or property of others, and with a conscious indifference to the surrounding circumstances and conditions, and with wilful disregard of the consequences, wilfully and wantonly drove and operated his said automobile at a high and dangerous rate of speed, greater than was then and there reasonable and proper, having regard to the traffic and use of the way and so as to endanger the life and limb and injure the property of other persons, at, to wit, the speed of 60 miles per hour, toward and through said Village of Galton, and toward and past said other motor vehicle, and wilfully and wantonly and with a consciousness that his conduct would naturally and probably result in injury to others, particularly the passengers in his said automobile, then and there drove his automobile toward, against and past the other motor vehicle, and suddenly turned his automobile toward the right, so that by and through and because of said wilful and wanton misconduct, the automobile of the defendant as it struck and passed said other motor vehicle skidded on said slick and slippery pavement and ran and was turned by the defendant off said pavement, and thereby said defendant's automobile collided with a pole near the side of said highway, and because of said wilful and wanton misconduct aforesaid and as a direct and proximate result and in consequence thereof, the plaintiff was thrown with

great force and violence against divers parts of said automobile, and was greatly hurt, etc.

In the second count, after the preliminary averments as in the first count, it is alleged that by and through and because of the wilful and wanton misconduct of the defendant, his automobile ran off of the paved portion of the highway onto the shoulder and collided with a pole on or near the side of said highway, and thereby and because of said wilful and wanton misconduct the plaintiff was greatly hurt, etc.

The two additional counts are in substantially the same language except they omit any reference to any other car being upon the pavement.

A general and special demurrer was filed to the declaration and overruled, and thereupon a plea of not guilty was filed and the cause proceeded to trial upon said issues. After a motion for a new trial had been overruled, appellant moved in arrest of judgment and now urges that the trial court erred in overruling his motion on the ground that the declaration does not set out a cause of action based upon wilful and wanton misconduct; that to state a good cause of action it must directly charge that the defendant wilfully and wantonly injured the plaintiff. A general and special demurrer having been filed and overruled, the sufficiency of the declaration cannot again be tested on a motion in arrest of judgment. *Reavely v. Harris,* 239 Ill. 526; *Chicago & A. R. Co. v. Clausen,* 173 Ill. 100.

Appellant next urged that the declaration charged him with the commission of various crimes, viz., assault with intent to commit murder, assault with intent to do bodily harm, attempted manslaughter, mayhem, assault with a deadly weapon, violation of section 41 '(b) of the Motor Vehicle Law, Cahill's St. ch. 95a, ¶ 42(2), violation of section 22 of the Motor Vehicle Law, Cahill's St. ch. 95a, ¶ 23, and assault and battery; and that, in civil cases, when a criminal offense is charged in the pleadings as an essential element of

the case, such offense must be proved beyond a reasonable doubt.

An examination of the declaration does not disclose a charge of any criminal offense necessary to be established by the evidence to maintain the action, which requires proof removing every reasonable doubt of guilt. The declaration charges wilful and wanton misconduct on the part of appellant in the management of his car, proof of which charge by a preponderance of the evidence would warrant a recovery. Even though the declaration charges appellant with a crime and such offense so charged is an essential element of the case, and for that reason must be proved beyond a reasonable doubt, yet appellant offered instructions which were given by the court to the effect that the plaintiff was required by law to prove her case by a preponderance of the evidence before she could recover; and he offered an instruction, which the court refused, stating that the plaintiff cannot recover unless the jury believe that she has proved beyond a reasonable doubt by the evidence that the defendant is guilty of wilful and wanton misconduct in the manner charged in the declaration. A party litigant cannot offer instructions on several inconsistent theories of liability and thus speculate on the action of the court as to which it shall adopt, and assign as error the one which it does not adopt, claiming it should have adopted the other as was done here.

Appellant contends that the suit is brought under section 42(b) of the Motor Vehicle Law, Cahill's St. ch. 95a, ¶ 43, and that the intent and purpose of this amendment was to eliminate the practice of guests suing their host, "except in those instances where it could be said the driver wilfully and wantonly so mismanaged his car, that it could be said from his conduct, he intentionally injured his guest"; and so is not, as termed by him, an ordinary case of wilful and wanton

negligence but one based upon a special statute. Section 42 was originally section 18 of the Motor Vehicle Law and, when enacted, paragraph "b" was not a part of the act but was added by an amendment, effective July 1, 1931. Cahill's Ill. Rev. St. 1931, ch. 95a, ¶ 43, provides:

"Sec. 42. (a) Nothing in this Act shall be construed to curtail or abridge the right of any person to prosecute a civil action for damages by reason of injuries to person or property resulting from the negligent use of the highways by the driver or operator of a motor vehicle or motor bicycle or its owner or his employee or agent, and in any action brought to recover any damages for injury either to person or property caused by running any motor vehicle or motor bicycle at a rate of speed greater than is reasonable and proper having regard for the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person, the plaintiff or plaintiffs shall be deemed to have made out a prima facie case by showing the fact of such injury and that the person or persons driving such motor vehicle or motor bicycle was at the time of such injury running the same at a speed greater than was reasonable and proper having regard for the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person.

"(b) *Provided, however,* that no person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent

and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought.''

It will be seen that this section, as originally enacted, did not abridge the right of any person to prosecute a civil action for damages, but on the contrary extended that right. Paragraph (b) limits a guest in his right of action, and he can recover for damages caused by an accident only when the wilful and wanton misconduct of the driver caused the accident, and such wilful and wanton misconduct contributed to the injury. It will be seen that section 42(b) of the Motor Vehicle Law does not give a cause of action but limits the common law right of the guest to recover for damages sustained; and no penalty is provided for any violation of said section.

It is also contended that appellee assumed the risk of being injured by voluntarily and knowingly taking the trip. The doctrine of assumed risk applies only when there is a contractual relation between the parties. *Walsh v. Moore,* 244 Ill. App. 458. It is also urged that the evidence does not tend to prove wilful and wanton misconduct on the part of the appellant in the operation of his automobile. It is sometimes difficult to determine the dividing line between negligence and wilful and wanton conduct, and no specific rules can be laid down for the determination of this question which can be applied to all cases or to all sets of circumstances or conditions. Whether the act is wilful and wanton is greatly dependent upon the particular circumstances of each case; when the omission to exercise care is so gross that it shows a lack of regard for the safety of others, it will justify the presumption of wilfulness or wantonness.

There is a sharp conflict of the evidence in this case. The proof on behalf of appellee shows that she was 16 years of age at the time of the accident and lived

in Mattoon, Illinois, where she attended high school; that shortly after six o'clock in the evening of December 21, 1931, she, together with Marybelle Sullivan and George Sweet, started on a trip to Champaign, Illinois, to attend a basketball game at the University of Illinois; that they were to go in appellant's automobile; Miss Sullivan rode in the front seat with appellant while appellee occupied the rear seat with Sweet; when they left Mattoon a misting rain was falling and there was a heavy fog and the pavement was wet and slippery; they left the city on State Highway Route No. 25, which was paved; that they could see only 10 or 15 feet ahead of the lights of the car in which they were riding; that appellee asked appellant if he could see, and asked him not to drive so fast and to be more careful; appellee asked appellant if his battery was low, and if that was what made his lights dim; and he said, no, that he had taken some boys to a football game the night before and it had been muddy and probably some of the mud was on his lights; when they arrived at Humboldt appellant stopped the car and wiped off his headlights; it was still raining and misting, and there was more fog than when they had left Mattoon, but they could see a little farther after the lights had been wiped off, but not more than 14 or 15 feet ahead of the car; that after they left Humboldt appellee again asked appellant not to drive so fast; that he was driving between 50 and 55 miles an hour; and at one time, when she glanced at the speedometer, it showed a speed of 48 miles per hour; that when they got to a point a few miles from Galton there was a car ahead, and appellant started to go around it, and his car slipped and swerved on the pavement, and appellee said to appellant, "Oh, Bob, be more careful; don't drive so fast"; at that time Miss Sullivan asked him not to drive so fast and be more careful, but he did not drive any slower and

continued at the same rate of speed until the collision; just prior to the collision appellant was driving between 50 and 55 miles an hour; that she requested him several times not to drive so fast, but he did not slow down any; when they got to Galton it was raining and the fog was more dense than when they left Mattoon; and appellee noticed lights on the west side of the road, that she remembered that the car swerved and of seeing the pole in front of her; that she became unconscious, and remained in that condition until she awakened in the hospital at Tuscola the next morning; she received two cuts on her face, three teeth were knocked out in front; she lost some of the upper jaw bone, and some of her gums came out with her teeth, and the top of her mouth was torn and four of her teeth on the right side of the mouth were pushed over to the middle of the mouth; her hip was dislocated, and there was a cut on her knee, and her nose was broken. The evidence further shows that the telephone pole with which the automobile collided was situated about 85 feet north of the north line of a road which intersected Route 25; that on the southwest corner of this intersection was a store operated by the witness, Baumgard; that the witness, Sievers, who lived some distance west of the store and on the intersecting highway, which was an oiled road, had driven his car to Baumgard's store and had stopped and parked it north of the store on the oiled road, west of Route 25, and facing east, and it was the lights of this car that extended east across Route 25.

It is further shown that appellant, when he approached this intersection and saw the light from Sievers' car, turned to the right off of the pavement and onto the east shoulder of Route 25, which was wet and muddy, and ran 85 feet until he collided with the telephone pole, and his automobile was completely wrecked. The above are the facts most favorable to appellee.

Appellant testified and was corroborated, in many particulars, by the other occupants of the car that his general speed was between 40 and 45 miles per hour, and that he did not exceed 48 miles per hour; that he swung off of the pavement onto the shoulder in order to avoid hitting Sievers' car, but there is no evidence that Sievers' car was on the roadway of Route 25. The only evidence on this subject was that it was standing still on the north side of the store, west of Route 25, on the oiled road. No witnesses testified that there was any collision between Sievers' car and that of appellant. Appellant denies that appellee asked him to decrease his speed, or that Miss Sullivan made any such request, and in this he is corroborated by the other occupants of the car. Miss Sullivan is appellant's fiancee, and Sweet works with appellant in the store of the father.

Under this condition of the evidence it was for the jury to determine whether appellant was guilty of wanton and wilful conduct in driving the car. The jury saw the witnesses and heard them testify, as did also the court, who refused to grant a new trial, and under all of the evidence and the circumstances we do not feel justified in holding that the verdict is contrary to the manifest weight of the evidence. *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464, 470; *Brown v. Illinois Terminal Co.,* 319 Ill. 326.

The judgment of the circuit court is affirmed.

*Affirmed.*