## STORCK v. NORTHWESTERN NAT. CASUALTY CO.

### No. 7362.

Circuit Court of Appeals, Seventh Circuit.

Nov. 15, 1940.

MAJOR, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's cause of action on motion for a directed verdict. The action was brought to recover damages for personal injuries sustained by the plaintiff while riding as a guest in an automobile operated by one Harold Lang, who was insured by the defendant.

The personal injuries were the result of an accident which occurred on U. S. Highway 41 in Lake County, Illinois, and plaintiff, in order to recover, must bring himself within the purview of Section 58a of Chap. 95½ of the Revised Statutes of the State

of Illinois for 1937, which, so far as here material, provides that no person riding as a guest shall have a cause of action for damages against the driver of an automobile, unless such accident shall have been caused by the willful and wanton misconduct of the driver, and unless such conduct contributed to the injury.

The cause was tried to a jury, and at the close of the testimony, defendant moved for a directed verdict, upon which the court reserved its ruling. The cause was submitted to the jury who were unable to agree upon a verdict. Thereafter, defendant's motion for a directed verdict was allowed.

■ The rule in Illinois is well established that in passing upon a motion to direct a verdict, the evidence and reasonable inferences to be drawn therefrom must be considered in the light most favorable to the party against whom the motion is directed. A similar rule prevails in Wisconsin where the case was tried. Trautman v. Charles Schefft & Sons Co., 201 Wis. 113, 228 N.W. 741. With this rule in mind, we will briefly state the material facts favorable to plaintiff.

On the day of the accident, Lang, one Schultz, and plaintiff, all young men, were returning to their homes in Wisconsin from a week end visit in Chicago. They started home on Sunday afternoon, October 3, 1937, and traveled north on U. S. Highway 41. This highway has four lanes for traffic, two for northbound and two for southbound, separated by a grass plot. At the point of the accident, these lanes form an overpass for a highway extending east and west. A person driving north on Highway 41 and desiring to turn either east or west on the intersecting highway is required to turn to his left and beyond the northbound highway to what is called a ramp, which is a highway between the northbound and southbound lanes on Highway 41, sloping downward and intersecting the east and west highway. Between the lanes for northbound traffic on Route 41 and this ramp is a concrete retaining or dividing wall surrounded by a plot of grass, and around the latter is a concrete curb six or eight inches in height. We fail to find in the record the size or dimensions of the concrete wall, but it is disclosed that it stands on an elevation and may be seen for a considerable distance by drivers approaching it from the south. One witness working on a house 300 yards or more

southeast of the wall testified that he could see it at the time of the accident.

At the time the party left Chicago, they had planned to take Schultz to Burlington, Wisconsin, where he could take a train home. What distance that was, or how much time they had to make the trip, the record does not disclose, but plaintiff testified they were "hurrying along." Before leaving Chicago the party visited a tavern. This was plaintiff's first trip over the highway. Plaintiff testified that as they proceeded north on the highway, Lang had been passing cars right along, and at one point the speed was 65 miles per hour. At that time plaintiff said to Lang: "Take it easy, I would rather get there in one piece than not get there at all." Lang then reduced the speed to 40 miles, and about fifteen minutes later, Schultz said to Lang: "For God's sake, slow down," and at that time the speedometer again showed 65 miles per hour; that there was a swinging of the car from side to side and that was the last plaintiff remembered.

Immediately before the accident the car turned to the left of the lanes for northbound traffic, ran over the concrete curb and crashed into the concrete wall. The right front end of the auto collided with the left side of the wall. The automobile was demolished and Lang and Schultz were instantly killed. Plaintiff was unconscious for three months. On cross-examination, he was unable to describe in detail the territory surrounding the highway at and south of the point where the collision occurred.

■ Defendant produced three witnesses who were traveling on the highway a short distance south of the point of the accident and who contradicted plaintiff's testimony to some extent, especially as to the speed the car was being operated. One of such witnesses placed the speed from 45 to 48 miles per hour a short distance south of the place of collision. We do not think, however, it is necessary to relate in detail their testimony. The weight to be attached to the testimony of the witnesses, as well as their credibility, was a matter for the jury. For the purpose of deciding the question raised on this appeal, we must, as stated, view the evidence in the light most favorable to the plaintiff.

In addition to the facts stated, it may be pertinent to point out that the accident occurred shortly before sunset on a clear day. About 300 feet south of the point of col-

lision, there was located on the shoulder a sign warning persons traveling north as to the highway intersection. There was a skid mark made by the Lang car for a distance of about 23½ feet, and which extended to the point of collision. After the car had been towed to a garage, it was discovered that the right front tire was blown out. There were no cars either passing or meeting the Lang car at or near the point of collision. There was nothing to obstruct Lang's view of the highway, nor to detract his attention at or immediately prior to the time of collision.

Appellant contends that the circumstances related required a submission of the case to the jury, while appellee contends to the contrary. A solution of the opposing contentions involves a construction of the Illinois act to which we have referred. Was there evidence, together with such reasonable inferences as might be drawn therefrom, that the accident was caused "by the willful and wanton misconduct" of Lang? It thus seems important to study the decisions of Illinois as to the construction placed upon this language by its courts. This statute, so far as we are advised, has not been construed by the Supreme Court of Illinois. As to what constitutes willful and wanton negligence, however, has frequently been the subject of discussion, which we think is material in appraising the language of the provisions before us. In Brown v. Illinois Terminal Co., 319 Ill. 326, 331, 150 N.E. 242, 244, the court said: "* * * A willful or wanton injury must have been intentional, or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. * * *"

In Streeter v. Humrichouse, 357 Ill. 234, 238, 191 N.E. 684, 686, the court stated the rule thus: "* * * An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person, or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness. * * *"

In Seiffe v. Seiffe, 267 Ill.App. 23, 30, the court said: "* * * Gross negligence may justify the presumption of wilfulness and wantonness when it is such as to imply a disregard of consequences. * * *"

In Reed v. Zellers, 273 Ill.App. 18, on page 24, which involved a construction of the Statute before us, the court said: "* * * Whether the act is wilful and wanton is greatly dependent upon the particular circumstances of each case; when the omission to exercise care is so gross that it shows a lack of regard for the safety of others, it will justify the presumption of wilfulness or wantonness."

Also see Farley v. Mitchell, 282 Ill.App. 555, and Murphy v. King, 284 Ill.App. 74, 1 N.E.2d 268.

In all the cases cited, the court has held that the question of willful and wanton misconduct or neglect was properly submitted to the jury. We have read the facts in each case with a view of endeavoring to ascertain what the courts have regarded as requiring such submission. We cannot here, of course, review the facts in all of such cases, but we think some light is thrown upon our problem by reference to the facts in the Streeter case which the Supreme Court of Illinois thought required a submission to the jury on the question of willful and wanton negligence. That was an action for damage by the administrator of a railroad employee who was riding on the footboard at the end of a tender on a switch engine. The engine was backing north at the rate of from 15 to 20 miles per hour, and across a street intersection. The defendant was driving a Dodge coupe east on the city street at the rate of speed from 30 to 35 miles per hour. The engine whistle was sounded for the crossing, and the bell rung. The defendant continued toward the crossing and struck plaintiff's intestate. Defendant's view of the engine as it approached the crossing was unobstructed. The court, on page 240 of 357 Ill., on page 687 of 191 N.E., states: "We cannot agree with the defendant that the speed of the Dodge coupe was the only evidence to support the charge of a willful and wanton injury. We cannot agree that evidence of speed, alone, is insufficient to warrant submitting that question to the jury. * * *"

It then proceeds to emphasize the fact that the defendant's view of the approaching engine was unobstructed and that he could readily have ascertained the dangerous situation. The reasoning of the

court in that case is of some pertinency in the instant situation.

The plaintiff's testimony discloses that defendant was driving at a high rate of speed and that he had been warned on two occasions, once by plaintiff and once by their co-passenger, that he was driving too fast. He approached the concrete wall in daylight with nothing to obstruct his view. There is perhaps no heavier responsibility placed upon the driver of an automobile than that he keep a vigilant look-out for any and all objects on the highway, stationary or otherwise, with which he might collide. This is important, not only for his own protection and that of his passengers, but for other persons using the highway. To what extent, if any, Lang discharged his duty in this respect, may be a matter of dispute. This much is plain, however, there was a sign warning him of the highway intersection which he either saw or could have seen, had he observed; the concrete wall with which he collided was plainly visible, which he saw or could have seen in ample time to have prevented the collision. The skid marks indicated that he applied his brakes some 22 feet from the point of collision. He, no doubt, saw the wall at that time. Had he looked and observed, he could have seen it long before. When he finally saw that he was about to collide, he was traveling at a rate of speed, whatever it was, too great to avoid the collision. Defendant argues that it is possible that the collision was caused by a blown-out tire, or defective mechanism of the car. Under the facts presented, however, we do not believe that any such possibility could be reasonably inferred. Defendant's contention in this respect means that the plaintiff, in order to be entitled to submit his case to a jury, is required to eliminate every possibility that the accident was caused in some manner other than that as claimed. We do not agree with such reasoning.

It would serve no good purpose to analyze and distinguish the cases relied upon by appellant. It is claimed, however, that one of such cases involves a similar state of facts, and that is Celner v. Prather, 301 Ill.App. 224, 22 N.E.2d 397. It is true, in that case the court held the trial court erred in its refusal to direct a verdict for the defendant. The facts there, however, are quite dissimilar to those of the instant case, notwithstanding defendant's claim to the contrary. Briefly, four young people were in an automobile which collided with a concrete abutment, killing the driver and injuring the other three occupants, including the plaintiff in the cause of action. No occupant of the car, or any other witness, testified concerning what happened prior to the collision. As the court said, page 226 of 301 Ill.App., page 398 of 22 N.E.2d: "* * * The only thing the evidence discloses is that it struck the concrete abutment with great force and violence. * * *"

Under those circumstances, the court concluded that it could not reasonably be inferred that the accident was the result of defendant's willful and wanton misconduct. We think the facts of the instant case place it in a different category.

In the instant case, it might reasonably be inferred—in fact it is a persuasive inference—that the collision, under the attendant circumstances, was, in the language quoted heretofore from Brown v. Illinois Terminal Co., supra, "* * * a failure, after knowledge of the impending danger, to exercise ordinary care to prevent it, or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. * * *"

We are of the opinion that a jury question was presented and that the court erred in directing a verdict. The cause is reversed and remanded, with directions that the cause be submitted to a jury.