MABEL BOEHRER, Administratrix of the Estate of HARRY JULIUS BOEHRER, Deceased, Appellant, v. GUY A. THOMPSON, Trustee, MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, and PETER SCHULLER, Respondents, No. 41143—222 S. W. (2d) 97.

Division One, July 11, 1949.

466

*Cox & Cox* and *William R. Kirby* for appellant.

468

*Thomas J. Cole* and *Oliver L. Salter* for respondent Guy A. Thompson, Trustee, Missouri Pacific Railroad Co.

*Moser, Marsalek, Carpenter, Cleary & Carter, W. E. Moser* and *G. W. Marsalek* for respondent Peter Schuller.

DOUGLAS, J.—Mabel Boehrer, widow of Harry J. Boehrer, brings this action for $10,000 damages for the wrongful death of her husband. He was a guest passenger in the automobile owned and driven by defendant, Peter Schuller, which was struck by a Missouri Pacific train in Monroe County, Illinois. At the close of plaintiff's evidence the trial court directed a verdict in favor of both defendants. Plaintiff has appealed.

The question for decision turns on the propriety of the trial court's action directing verdicts for the defendants as tested by the law of Illinois which governs this case. As to defendant Schuller, the driver of the automobile, the question is whether plaintiff's evidence showed him to be guilty of willful and wanton misconduct as required by the Illinois guest statute. We have a similar question for decision as to the railroad. Since decedent was in fact a trespasser upon the right-of-way, the railroad owed him the duty not to willfully or wantonly injure him. In determining these questions we must, of course, regard the evidence in its most favorable aspect to plaintiff.

470

We will first consider the evidence on the question of Schuller's liability.

Peter Schuller was an inveterate fisherman. For eight years he and his neighbors had gone fishing together about every week end. One Saturday afternoon in October, 1946 he picked up in his automobile his neighbors Boehrer, the decedent, and Baier, and another friend Fults who was to guide them to a new fishing hole, Foundation Ditch, in Illinois. They left St. Louis, crossed the Jefferson Barracks bridge and took the Levee or Bottom road to their destination. There was a detour in this road because of some work on the levee so they decided to come back a different route. They were returning to St. Louis after dark. Schuller was driving his 4-door coach in an easterly direction. As they approached a fork in the road Fults, who was riding in the front seat, directed Schuller to ''turn right here.'' Schuller was going about 18 miles per hour. He turned sharply to the right. The road went up a slight incline, Schuller reducing his speed to 5 miles per hour. Then Schuller felt his car bumping over railroad cross ties. By continuing to turn right he had driven off the side of a grade crossing over railroad tracks, and was driving along the railroad right-of-way, his car straddling the nearest rail.

The road was a country road, graveled. Approaching the crossing, known as Leber Crossing, Schuller was driving in a direction slightly east of north. The road made a sharp, abrupt turn to the right toward the southeast of about 90 degrees. Where it reached the first railroad track it veered to the left. It crossed the tracks in a decidedly oblique direction. As the automobile was making the ascent up to the tracks and was turning to the right at the same time, its headlights were elevated and did not shine directly on the road. Schuller did not know he was approaching a railroad crossing, did not see the tracks, and did not notice the railroad crossing sign. He testified that he continued to steer to the right because he believed the road was turning that way, and he believed he was following the road. He drove along the railroad roadbed some 15 to 25 feet before he realized where he was. As soon as he did he stopped his car. Baier, who was riding in the back seat with decedent, jumped out. He saw the headlight of an approaching train over a quarter of a mile to the north and warned the others. Schuller got out and started away from the car. Someone said decedent was still in the car so he went back. He climbed in the rear of the car, grabbed Boehrer's arm and shook him to wake him up, saying: ''Harry, come on out. There is a train coming down the train tracks.'' Receiving no answer he shook him again. Then Boehrer finally said: ''What are you trying to do?'' When it appeared the headlight of the train ''was just on top of the car'', Schuller stepped out to safety. The train struck the car, causing Boehrer's death.

■ Illinois has a guest statute which authorizes a guest to recover from the operator of the motor vehicle in which he is a passenger only where the accident is caused by the willful and wanton misconduct of the operator. 1945 Ill., R. S., State Bar Ed., Motor Vehicles, Sec. 58a.

The Illinois decisions have recognized that the determination whether an act is willful or wanton depends upon the particular circumstances of each case. Rohrer v. Denton, 306 Ill. App. 317, 28 N. E. (2d) 572.

In making that determination here we must follow the rule announced by the Illinois courts as to what constitutes willful and wanton misconduct, even though the Illinois rule may not be as strict as our own. While those courts have pointed out the practical impossibility of promulgating a rule of general application we find the following in a recent case approved by a consistent line of decisions: "A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N. E. 242; Heidenreich v. Bremner, 260 Ill. 439, 103 N. E. 275; Illinois Central R. Co. v. Leiner, 202 Ill. 624, 67 N. E. 398, 95 Am. St. Rep. 266." Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N. E. (2d) 293.

Like other questions of liability whether an injury is the result of willful and wanton misconduct is a question of fact for the jury. But "where there is no evidence tending to support the charge of willful and wanton conduct, there is no question of fact to submit to a jury, and the motion to direct a verdict on those counts would present a question of law for the court to decide." Brown v. Illinois Terminal Co., 319 Ill. 326, 150 N. E. 242, 151 ALR 1. And see Greene v. Noonan, 372 Ill. 286, 23 N. E. (2d) 720.

■ We find no evidence in this case "tending to support" the charge of willful and wanton misconduct against defendant Schuller. It was established without dispute that Schuller did not intend to turn off the road onto the railroad roadbed. Thus there was no intentional injury. He did not know of the presence of the railroad tracks, nor did any of the passengers warn him about them. So he was not guilty of a reckless disregard of decedent's safety after knowledge of impending danger. But, says plaintiff, his failure to discover the danger, that is the presence of the railroad crossing, was the result of recklessness and carelessness because it could have been discovered by ordinary care. We do not agree under the particular circumstances ■ here. Schuller was not familiar with the road. It was after dark and the railroad crossing was not illuminated. Ac-

cording to the evidence the automobile headlights did not reveal the tracks. The beams of the headlights were tilted upwards as the automobile followed the ascent of the road as it neared the crossing. Schuller testified he kept a continuous lookout ahead: ''I just watched straight ahead.'' This testimony was not contradicted. Then as soon as Schuller realized he was on the railroad tracks he applied the brakes. He stopped when he had traveled between 15 and 25 feet from the crossing. He was driving carefully, at a rate of 5 miles per hour which indicated caution, and was watching the road. These facts are not sufficient to make a prima facie case of willful and wanton misconduct against Schuller.

Plaintiff contends Schuller should have known of the crossing because of the crossarm warning signs on either side of the tracks at the sides of the road. Schuller testified he did not notice them. Plaintiff argues that the law will not permit a driver to say he did not see cautionary signs when he could have seen such signs if he had looked. In other words, in this situation says plaintiff, to look is to see. He relies on Thomas v. Buchanan, 257 Ill. 270, 192 N. E. 215; Briske v. Village of Burnham, 379 Ill. 193, 39 N. E. (2d) 976; Dee v. City of Peru, 343 Ill. 36, 174 N. E. 901. Such rule is well settled where the facts permit its application. But it can not apply in a situation where, as here, the physical facts would prevent an object from being seen even though the person charged with keeping a lookout has faithfully maintained it. One of plaintiff's exhibits, a diagram to scale of the crossing and showing the location of the warning signs, demonstrates that the warning sign on Schuller's side of the tracks would not have been in the direct path of the automobile headlights as the automobile was going around the sharp right turn on the ascending road. The sign was 15 feet from the side of the road, and on the inside of the right-hand curve of the road. The headlights would sweep around the outside of the curve. What would be plainly visible by day is not necessarily visible to the driver of an automobile by night. Schuller's failure to see the warning sign even though he kept a constant lookout does not convict him of willful and wanton misconduct. Mr. Baier riding in the back seat looking out the window on the right side did not discover the crossing until the automobile was on the railroad tracks. He did not see the crossarm either.

To summarize, the evidence shows without dispute that Schuller did not consciously drive onto the railroad right-of-way. He did not intentionally disregard any known duty, nor was he guilty of an entire absence of care. There was an utter failure of proof of willful and wanton misconduct under both the rule set out above and the rule expressed, perhaps more pertinently to the facts here, in Bartolucci v. Falleti, 382 Ill. 168, 46 N. E. (2d) 980, as follows: ''Plaintiff's right to recover is, consequently, dependent upon proof that the accident causing the injuries was occasioned by defendant's willful

and wanton misconduct. Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness. Streeter v. Humrichouse, 357 Ill. 234, 191 N. E. 684; Jeneary v. Chicago & Interurban Traction Co., 306 Ill. 392, 138 N. E. 203.''

Under the circumstances of this case we find plaintiff's evidence did not show Schuller was guilty of willful and wanton misconduct.

We turn now to the question whether plaintiff's evidence made a submissible case against the railroad. We find it did not, and the trial court properly directed a verdict in its favor.

Plaintiff's principal argument as to the liability of the railroad is based on the failure of the railroad to give the statutory warning by bell and whistle as the train approached the crossing. R. S. Ill. 1945, State Bar Ed., Chapt. 114, Sec. 59. The witnesses testified they heard no whistle and no bell. Conceding the evidence shows the statutory warning was not given, still plaintiff's evidence failed to make a submissible case against the railroad under the Illinois decisions. Plaintiff's decedent was not on the crossing when he was struck, but was on the right-of-way some 15 to 25 feet from the crossing. Thus he was a trespasser. The duty of a railroad to a trespasser is well settled by the Illinois courts. That duty is to refrain from willfully or wantonly injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril.

The case of Thompson v. C. C. C. & St. L. Ry. Co., 226 Ill. 542, 80 N. E. 1054, is apposite on the facts. The plaintiff there was driving stock from the railroad right-of-way, a few yards from a crossing, when he was injured by a train. He relied on the failure of the railroad to give a crossing warning. Answering this contention, the court said: ''In Williams v. Chicago & Alton Railroad Co., 135 Ill. 491, 26 N. E. 661, 11 L. R. A. 352, 25 Am. St. Rep. 397, it was held that unless the injured person was upon a public highway or was a passenger upon the train the railroad company owed him no duty to ring a bell or sound a whistle as required by statute, and he could not hold the railroad company liable for a failure to perform the statutory duty, because the company had violated no duty which it owed to him. The same principle was applied in Illinois Central Railroad Co. v. Eicher, 202 Ill. 556, 67 N. E. 376, where it was held that the only duty which a railroad company owes to a trespasser or to a licensee is to refrain from wantonly or willfully injuring him, and to

474

use reasonable care to avoid injury to him after he is discovered to be in peril.''

In Briney v. Illinois C. R. Co., 401 Ill. 181, 81 N. E. (2d) 866 the rule is again confirmed that ''. . . to a trespasser the owner owes only the duty not to willfully and wantonly injure him and to use ordinary care to avoid injury to him after his presence on the premises in a place of danger has been discovered. Illinois Central Railroad Co. v. Eicher, 202 Ill. 556, 67 N. E. 376; Neice v. Chicago and Alton Railroad Co., 254 Ill. 595, 603, 98 N. E. 989, 41 L. R. A., N. S. 162; Bremer v. Lake Erie and Western Railroad Co., 318 Ill. 11, 148 N. E. 862, 41 A. L. R. 1345.'' The development of this rule by the Illinois decisions is comprehensively reviewed by Judge Lindley in Sperry v. Wabash R. Co., 55 F. Supp. 825.

The action of the trial court directing verdicts in favor of both defendants was proper under the evidence as adduced by plaintiff, and the judgment for both defendants is *affirmed*. All concur.