Alpha **HISLE**, Respondent,

v.

Robert **BALKCOM**, Appellant.

No. 47003.

Supreme Court of Missouri,
Division No. 2.

Sept. 14, 1959.

Motion for Rehearing or for Transfer to
Court en Banc Denied Oct. 12, 1959.

William H. Tombrink, Strubinger, Tudor, Tombrink & Wion, St. Louis, for appellant.

George R. Gerhard, Gerhard & Padberg, Sidney M. Glazer, St. Louis, for respondent.

BARRETT, Commissioner.

In this action by a guest, Alpha Hisle, against her host, Robert Balkcom, to recover damages for personal injuries under the Illinois guest law a jury has awarded the plaintiff $12,500. The essentially meritorious question upon the defendant's appeal is whether reasonable minds could differ as to the substantiality and probative force of the evidence adduced; specifically, whether from a favorable view of the circumstances a jury could find that plaintiff's injuries and "such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle." Ill.S.H.A., ch. 95½, Sec. 9–201. The conduct hypothesized as wilful and wanton in the plaintiff's main instruction was that "the windshield of the automobile was steamed and fogged and did not afford defendant a reasonably clear view of obstructions * * * in the path of travel of said automobile" with the result that when Balkcom turned his automobile to the left in approaching McKinley Bridge from Venice it collided with an "abutment."

The witnesses and parties called the "obstruction in the path of travel," with which the 1949 two-door Plymouth sedan collided, an "abutment." From photographs and the statements of counsel it appears that near the east approach to the bridge there is a concrete pier or post in the street, the post separates or divides the traffic lanes and it is possible to drive either to the left or right of the pier in driving onto the bridge. The concrete pier appears to be four or five feet in height and three to four feet in diameter and it is painted with black and white diagonal stripes. There are two utility poles on the abutment, one of them a light pole. Balkcom was familiar with the bridge, the streets to and from St. Louis to Venice, and with the abutment, having traveled over the route six times within six months of the collision.

The circumstances and background of the occurrence were these: Alpha, age 38, and Robert, age 44, had been dating for more than a year as well as during the trial of this case, in fact Alpha considered herself engaged to Robert. On February 11, 1957, after work, Robert went to Alpha's place of residence about nine o'clock, they watched television until eleven or eleven-thirty and then they went to the 2300 Club, a tavern at 2300 Salisbury. There they stayed until closing time, Alpha had a couple of beers and Robert had one highball. The 2300 Club closed and they decided to go over "to the east side," across the river, to the 316 Club in Venice, Illinois, to eat. A casual acquaintance, known as "Chuck," joined them and they drove across McKinley Bridge to Venice in the 1949 Plymouth and parked at the 700 Club, 120 yards or so from the approach to the bridge and wa¹ked a block or two down the street to the 316 Club. There, Alpha said, Robert had no drinks and she had another beer. About 2 or 2:30 o'clock they started home, the weather was "kindly cool and damp, more or less." There had been no objection to the manner in which Robert drove the automobile. He backed out of the parking lot, proceeded north on the right side of the street and drove about a block or a block and a half, intending to turn left on the approach to the bridge when the automobile collided with the post. He said that as he turned left in second gear at a maximum speed of fifteen miles an hour he was blinded by the bright lights of an oncoming automobile and did not see the post; "a bright light hit me in the face and I couldn't see nothing." Alpha did not see the post and she did not see another automobile with bright lights. She too said that the automobile was in second gear, but she said that Robert was accelerating its speed and that its maximum speed was fifteen to twenty miles an hour.

Alpha said that when they got in the automobile at the 700 Club the windshield "was kindly smoked up, kindly fogged; you couldn't see clear out of it." While she had had no cause to complain of Robert's

driving she said that as they proceeded north up the street "I told him to take it easy" because "I couldn't see through my side, through the windshield." There wasn't anything about his driving that she objected to; "Only when I could not see clearly out of the windshield myself," and she did not ask him to clean the windshield. When asked whether she could distinguish objects through the windshield she said, "No, not too clearly, no, sir." Just prior to the collision she could see that Robert was driving on the right side of the pavement, but she was having difficulty seeing through the windshield, she could see the street but "Not very clearly, I could see, not like I should, though," and, as stated, she did not see the concrete abutment as the left or driver's side of the automobile struck it. Alpha received first aid at a hospital and they returned to the automobile and after pulling the left front fender up from the tire Robert drove back to St. Louis.

In Myers v. Krajefska, 8 Ill.2d 322, 134 N.E.2d 277, the defendant, after several drinks, drove at a speed of fifty to sixty miles an hour in mist past warning signs and through a barricade into a gravel hopper and it was held that the proof supported the finding of wilful and wanton negligence within the meaning of the guest statute. In that case counsel for the defendant urged that the Illinois courts had adopted or followed this court's erroneous definitions of wilful and wanton misconduct but the Supreme Court of Illinois tacitly, if tactfully, paid some deference to our interpretation and understanding of its guest law. See, for example, Barnes v. Lackey, Mo., 319 S.W.2d 638; Boehrer v. Thompson, 359 Mo. 465, 222 S.W.2d 97; Schneiderman v. Interstate Transit Lines, 394 Ill. 569, 69 N.E.2d 293; Amenda v. Suits, 8 Ill.2d 598, 134 N.E.2d 811. There is no hard and fast rule, however, and "the determination whether an act is willful or wanton depends upon the particular circumstances of each case." Boehrer v. Thompson, supra [359 Mo. 465, 222 S.W.2d 99]. "Wilful and wanton misconduct," with consequent liability under the guest statute, is a matter of degree, but the subject "misconduct" definitely lies "in that area of fault between ordinary negligence and actual malice" (Myers v. Krajefska, supra) [8 Ill.2d 322, 134 N.E.2d 280] and the conduct complained of must certainly amount to something more than ordinary negligence. Annotation 44 A.L.R.2d 1342. In each case, as in Myers v. Krajefska, the Illinois courts very carefully illustrate and demonstrate upon the facts some compelling circumstance supporting or not supporting the findings of wilful and wanton misconduct. See, for example, Meade v. Robinson, 344 Ill.App. 189, 100 N.E.2d 400 and Foster v. Bilbruck, 20 Ill.App.2d 173, 155 N.E.2d 366.

In Simpson v. Marks, 349 Ill.App. 527, 111 N.E.2d 370, the defendant host removed both hands from the steering wheel to embrace, over her repeated protests, the plaintiff guest; the automobile went out of control on Chicago's Outer Drive, ran across a parkway and crashed into a post. In McCary v. Wilson, 11 Ill.App.2d 580, 137 N.E.2d 867, the host, at a speed of thirty miles an hour, backed into a tree. In Stephens v. Weigel, 336 Ill.App. 36, 82 N.E.2d 697, the dim headlights on an automobile lighted the road ahead but ten to twenty feet, nevertheless, over repeated protests, the host drove at speeds of fifty and sixty miles an hour and when blinded by oncoming headlights drove onto the shoulder where he could not see and collided with a telephone pole. While it was held that the mere violation of a statutory speed limit did not of itself constitute wilful and wanton misconduct, it was held in that case that the fact could be found in all the circumstances. In Reed v. Zellers, 273 Ill.App. 18, there were inadequate lights, a speed of sixty miles an hour through a village, and a wet and slippery pavement when the automobile went off of the highway and crashed into a pole. In Barnes v. Lackey, supra, this court likewise held that the evidence supported the

finding of wilful and wanton misconduct when a hostess drove into a sharp curve, past 45-mile-an-hour zone signs, at sixty miles an hour and lost control of her overturning automobile.

On the other hand, in Boehrer v. Thompson, supra, fishermen were on their way home on an unfamiliar road, at the direction of a passenger the host turned to the right and unwittingly drove upon and down a railroad track, but as to a sleeping guest in the back seat who did not escape this court held that the act was not intentional and that a jury could not find wilful and wanton misconduct in all the circumstances. In Lane v. Bobis, 340 Ill.App. 10, 91 N.E. 2d 106, 107, hunters' dogs in the back seat created a disturbance, the guest reached back and tried to separate the dogs; the host, driving at a speed of twenty-five miles an hour, reached back with one hand to aid in quieting the dogs and the automobile ran out of control on a gravel road and crashed into a tree. The Illinois court held that these circumstances failed "to make a question of fact for the jury," that the conduct complained of could not be said to constitute wilful and wanton misconduct.

█ An unclean windshield, like atmospheric conditions or blinding lights, may proportionately increase the degree of care imposed upon a guest as well as upon a host even though a guest is not bound to exercise the same degree of care as that imposed upon the driver of a vehicle. Annotations 42 A.L.R.2d 350, 354; 42 A. L.R.2d 13. And in the circumstances of a particular case, the manner in which the driver of an automobile operates the vehicle when his vision is obscured from an unclean windshield or from other causes may charge him with wilful and wanton misconduct. 5A Am.Jur., Sec. 544, p. 575; annotation 22 A.L.R.2d 292, 393–407; Duf-fy v. Cortesi, 2 Ill.2d 511, 119 N.E.2d 241. But in this case the only circumstances are that the windshield was "kindly smoked up, kindly fogged" and the automobile collided with the post. Alpha could see the street but "not very clearly * * * not like I should." While she told Robert to "take it easy" there was no specific complaint of the windshield or of the manner in which he drove. There was no heedless, headlong speed, the automobile did not run out of control, there was no claim of intoxication, and from all that appears in turning left in second gear at a maximum speed of fifteen to twenty miles an hour he did not see and collided with the abutment in the street. There was no rain or fog or ice, or sleet and frost on either the highway or the windshield. Robert in thus causing or permitting his automobile to collide with the abutment may have been guilty of ordinary negligence but it may not be said that his conduct falls within "that area of fault between ordinary negligence and actual malice" (Myers v. Krajefska, supra), or that in all the circumstances a jury could find him guilty of "wilful and wanton misconduct" within the meaning of the Illinois guest law. Boehrer v. Thompson, supra; Lane v. Bobis, supra; McGuire v. McGannon, 283 Ill.App. 293.

In this view of the appeal, that there is no evidence in the record to support the finding (Duffy v. Cortesi, supra), the judgment is reversed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.