LAWRENCE HENRY, An Infant, by DAVID G. HENRY, His Next Friend, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.—3 S. W. (2d) 1004.

Court en Banc, March 17, 1928.

*Watts & Gentry* for appellant; *V. W. Foster* of counsel.

*Charles P. Noell* for respondent; *Glen Mohler* of counsel.

GANTT, J.—Action for personal injuries alleged to have been sustained by plaintiff as the result of the negligence of defendant. He was injured at a public crossing in Belleville, Illinois, where defendant's track, running east and west, crosses 17th Street, running north and south. This is the second appeal, and the opinion on the former appeal will be found in 282 S. W. 423.

The petition contained a number of charges of negligence, but plaintiff went to the jury on only two of them: (1) failure to give the bell and whistle signal; and (2) the humanitarian doctrine.

The answer of defendant admitted its corporate existence, its operation of a railroad in the State of Illinois, that on May 15, 1921, plaintiff sustained an injury in Belleville, which resulted in the amputation of his left arm; and denied all the other allegations of the petition. The remainder of the answer attacked the validity of certain ordinances pleaded in the petition, but those ordinances were abandoned. Judgment was for plaintiff for $15,000, and defendant appealed.

There was evidence pro and con that the bell and whistle signal was given. Defendant concedes that if plaintiff was standing on the

crossing at the time mentioned in his testimony he was in plain view of the engineer and fireman, who testified they were at their post of duty, and that the engine could have been stopped many times before injury to the boy.

Plaintiff contends that at the time he was injured he was standing on the south rail of defendant's track at the 17th Street crossing, with his back toward the east, and that he was struck by an engine moving westward over said crossing.

Defendant contends plaintiff was not so injured, but that he was injured about ninety feet west of the crossing as a result of having been pushed down the bank by his brother Howard against the engine or car as the train was passing.

The facts are as follows: Plaintiff resided with his parents at 10 N. 15th Street in Belleville. On Sunday, May 15, 1921, Frank Marsh, a friend of plaintiff's brother, Howard Henry, dined with the Henry family. Immediately after the noonday meal the Henry boys and Marsh started to the Marsh home, about three-fourths of a mile west of the Henry home. Howard was eleven, Frank ten, and plaintiff, Lawrence, eight years old. The older boys ran west to 17th Street, then south on 17th across defendant's track, then west up a bank that ran west from the west side of said street and parallel to and near defendant's unfenced track. From the time the boys left the Henry home plaintiff, though running, could not keep up with the older boys. He testified that when he reached 17th Street he was out of breath and tired, which caused him to slow up as he crossed said street; that he continued slowly south on the west side of said street to defendant's track, where he stopped on the south rail to rest; that he stood there with his back towards the east, crying and appealing to the boys to wait for him; that while in this position some part of the front of the engine struck the left side of his back, became entangled in his clothing so that he was dragged ninety feet from the west line of 17th Street, and there the hold of the engine upon his clothing broke and he fell south of the track; that he arose and ascended the sloping bank, where he was met by Howard and Frank in response to his cries; that they assisted him to 17th Street, and there two men assisted him to the residence of Mr. Steakhouse, where he was given first aid and then taken to a hospital in Belleville, where his arm was amputated that day.

Howard Henry testified that when he reached the top of the bank west of 17th Street he looked back and saw plaintiff standing on the track at the 17th Street crossing; that he continued west and did not see an engine, train or plaintiff from that time until the engine and train were passing a point directly north of him; that at this time Frank Marsh, who was following, called his attention to the cries of

plaintiff, whereupon they went to his assistance, met him about the time he got to the top of the bank and assisted him to 17th Street and turned him over to two men who assisted him to the residence of Mr. Steakhouse; that he and Frank then hurried to the Henry home to inform plaintiff's parents of his injury. As they went over the 17th Street crossing he found Lawrence's cap near the south rail of the track and just a few feet west of the west line of 17th Street.

Mrs. Ethel Eicker testified for plaintiff, as follows: that she resided with her parents, Mr. and Mrs. Brewer, at the northwest intersection of the railroad right-of-way and 17th Street on May 15, 1921; that on this day and about noon time she and her mother were cleaning up the dinner dishes, and she went from the kitchen to throw scraps to the chickens in a pen in the back yard. When she reached the south porch she heard plaintiff crying, and, looking across toward the east, saw him standing on the south side of the railroad track right at the crossing; that no train was in sight at that time, and she went to the west end of the lot to the chicken pen, threw the scraps to the chickens and started east toward the house. Just before she reached the porch a train, moving westward, was passing, and she heard loud screams. When the train had passed she saw plaintiff going up the bank south of the right-of-way and saw the older boys coming down to meet him; that she did not see plaintiff when he was injured by the train.

Members of plaintiff's family testified as follows: that plaintiff's clothing at the time of his injury consisted solely of a waist, pair of trousers and cap; that the left sleeve of his waist was torn all the way down and his left trouser leg was torn; that the skin and flesh were torn into strips from shortly below his left shoulder to the tips of his fingers, and his left side was scratched and bruised.

David Stein testified that he went to the place where plaintiff was injured and picked up a piece of flesh or skin as big as a penny, hanging on the edge of the rail about thirty feet west of the west line of 17th Street, and another piece of flesh or skin on the track about forty feet west of said line. "I heard others say, 'There's another piece; there's another piece,' but I didn't pay any attention to that."

The engineer and fireman testified the train had been cut in two some distance east of the crossing, for the reason the engine could not pull the train up the grade and over the crossing; that as they proceeded west toward the crossing with the front part of the train they were alone on the engine, occupied their seats and were looking westward as they approached the crossing and passed over it; that they did not see plaintiff or anyone on or near the crossing; that they knew nothing of the injury until they passed over the crossing on their return trip eastward for the balance of the train.

A number of witnesses called by defendant testified to having gone to the scene of the accident shortly after the occurrence and to having walked up and down the track between 17th Street and the signal box, looking for signs that would indicate where and how the accident occurred. All of them stated there was no sign of any kind, such as blood, hair, bits of clothing, flesh, skin, bone of other foreign object or disturbance of the ballast about the end of the ties between the west line of 17th Street and the point where a blood spot was found on the south rail of the track nearly opposite the signal box— something like ninety feet west of 17th Street. At that point there was a blood spot on the rail and bare-foot tracks led both up and down hill between that point and the top of the bank south of it, and blood was found on the weeds and grass, trailing up from that point to the top of the bank.

Three physicians testified they attended plaintiff after his injury and assisted in the amputation of his left arm; that while at the hospital plaintiff told them, in substance, that he, his brother and a playmate were playing on the bank near the Illinois Central Railroad and a train came by, "and he said, 'My brother said to me, I will push you down.' He meant it playfully, but he pushed him and he rolled down the rest of the way until he got to the freight train, where he was injured."

Plaintiff testified he had no recollection of making such a statement.

Mr. and Mrs. Charles Boyce were called as witnesses for defendant and testified that they were walking between the track and the bank just south of it, and when they were about two car-lengths west of the signal box they saw two or three boys on the bank, and as the train passed the boys started to run down the bank, "and it looked to me as if one of the little fellows grabbed to catch hold to take a ride, or grabbed for the airbrake to pull the rod, when he stumbled and threw his arm out as the train was passing along. He jumped up and the other boys run down the bank to meet him."

I. Defendant insists that it was entitled to a directed verdict for the reason the plaintiff's testimony is unbelievable and contrary to physical facts. It is argued that he was tired from running long before he reached the crossing and that it is unbelievable he could continue until he reached the south rail of the track at the crossing and there stop at a point he knew to be dangerous. People are daily walking, sitting and occasionally sleeping on railroad tracks. Many of them sustain injuries while doing so. This considered, we do not think the testimony unbelievable.

It is further argued that he could not have stood on the crossing, as testified to by him, without having heard the noise of the train (which was heard by others) as it approached the crossing. He might have been so occupied with his effort to overtake the older boys that he did not notice the noise made by the train. Such must have been the conclusion reached by the jury.

And the further contention that if plaintiff was standing on the crossing he would have been seen by the engineer and fireman and the train stopped before injuring him was a question of fact for the jury. They may have believed their attention was directed otherwise.

It is further argued that testimony of the plaintiff that he was struck on the left side of the back by the engine while facing west and standing on the crossing is contrary to physical facts. On this point plaintiff testified as follows:

"The boys went about half a block towards the west before the train came and they were at that point when I last saw them before the accident. The train struck me on the left side of the back. The front of the engine struck me. I do not know what it was that I got tangled up with, whether it was the cowcatcher, pilot beam or some other part of the engine. When it struck me I fell face downwards. I was being dragged on the ground on my left side up to the time I got loose from the engine and my left side was being fastened to the engine some way. I got loose because I jerked. Some part of the left side of my clothing tore and let me loose. I do not know whether it was my pants or waist."

If plaintiff was facing directly west, some part of the engine could have struck him on both sides of the back. The older boys were southwest of the track, and, he testified, he was looking toward them; if so, he could have been struck on the left side of the back. His age considered, it may be that he was unable to give a rational account of just how he was struck. There was substantial evidence from which the jury could infer that he was standing on the crossing at the time he was struck by the engine, and they must have so inferred. This inference would be contrary to the theory of defendant that plaintiff was struck about ninety feet west of the crossing. If plaintiff was struck by the engine while he was standing on the crossing, his inability to give an accurate account of just how he was injured would not authorize a directed verdict for defendant. There is no merit in the contention, and it is overruled.

II. Defendant insists the court was in error in admitting in evidence after the close of defendant's case the testimony of Frank

Marsh to the effect that Howard did not push his brother down the bank and against the train. No witness for defendant so testified, and it is contended the evidence was not in rebuttal. The error, if any, is not for review. The motion for new trial contains no such assignment of error.

III. Defendant charges the court with error in giving the following instruction:

"The court instructs the jury that if the jury find for the plaintiff under all the evidence in the case and all the other instructions given by the court in estimating and determining the amount of his damages they may take into consideration in connection with all the facts and circumstances in evidence the character and extent of his injuries, if any, occasioned by being run into by the engine in question and directly caused thereby, plaintiff's physical pain and mental anguish, if any, resulting from said injuries, if any, and whether such injuries or any of them are permanent in their nature, and may find for him such sum as in the judgment of the jury under all the evidence in the case will fairly and reasonably compensate him for the injuries, if any, so received."

It is claimed the instruction assumes that plaintiff was struck by the engine and thereby injured. We do not so understand the instruction. It directs the jury on the measure of damages in the event they find that the plaintiff was struck by the engine and thereby injured. The contention is overruled.

IV. Defendant claims prejudicial error as follows: (1) that when its counsel would make an objection to the evidence offered or to questions asked by plaintiff's counsel, said counsel would sneer and smile to the jury; and (2) that plaintiff's counsel while cross-examining Mrs. Boyce stated in the presence of the jury, "I know what the claim agent told you to say." The court sustained objections made by counsel for defendant in each instance and rebuked counsel for plaintiff. This we think was sufficient to overcome any prejudice that may have followed.

Defendant next complains that plaintiff's counsel in closing the argument commented upon the argument made by defendant's counsel and referred to the action of the claim department in the case, as follows: "It smells so bad that it smells to high heaven." Objection by defendant was made and promptly sustained, and the court instructed the jury to disregard said statement of counsel. The statement was very improper, and there is no evidence in the record tending to show that any member of the claim department was guilty of improper conduct in connec-

tion with the case on trial. This was the only objection made by the defendant during the closing argument. When we consider the promptness with which the learned trial judge sustained the objection and instructed the jury to disregard the statement, we do not see how the failure of the court to administer a rebuke could have been prejudicial to the defendant. The contentions are overruled.

While defendant's motion for a new trial charged the verdict to be excessive, the question is not mentioned in either its assignment of errors, points and authorities, or argument; therefore, we will treat the assignment as having been abandoned.

It follows the judgment should be affirmed. It is so ordered. All concur.