Vernie Thillman, Appellee, v. John Early, Administrator of Estate of Michael Kazunas, Deceased, Appellant.

**Gen. No. 10,406.**

Opinion filed May 4, 1950. Released for publication May 23, 1950.

KNIGHT, HAYE & KEEGAN, of Rockford, for appellant.

BURRELL & BURRELL, of Freeport, and WILLIAM E. COLLINS, of Rockford, for appellee; DAVID M. BURRELL, of Freeport, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On November 24, 1947, Michael Kazunas was driving his Ford automobile on Illinois Route 2, north of Rockford, Illinois. Sitting in the front seat beside him was his wife and minor child. In the rear seat was his mother-in-law, Mrs. Anna Misukanis, and her daughter, Vernie Thillman. Vernie Thillman was a sister of Mrs. Kazunas. They had left the City of Rockford about 6:25 a. m. After they had gone a few miles north of Rockford, their car collided with one driven by George A. Carter. Michael Kazunas, his wife and child were killed in the accident. Vernie Thillman was injured, and she brought a suit in the circuit court

of Winnebago county, against John Early as administrator of the estate of Michael Kazunas, deceased, and George A. Carter, to recover damages for her injuries.

In her complaint she alleged that Michael Kazunas was guilty of wilful and wanton misconduct that caused her injuries. She specifically charged the defendant: "(a) Wilfully and wantonly drove and managed his automobile. (b) Drove and operated his automobile at a speed greater than was reasonable and proper with regard to the traffic and the use of the way, contrary to the provisions of Illinois Revised Statutes, Chapter 95½, Section 146 (a) [Jones Ill. Stats. Ann. 85.178, supbar. (a)] which was then and there in full force and effect. (c) Drove and operated his motor vehicle from the right or easterly half of the pavement over onto the left or westerly half thereof as the motor vehicle of the said Carter was then and there approaching. (d) Drove and operated his motor vehicle from the right or easterly half of the said highway over onto the left or westerly half at such a time when the automobile driven by the said Carter was then and there approaching, contrary to the provisions of Illinois Revised Statutes, Chapter 95½, Section 151 [Jones Ill. Stats. Ann. 85.183]."

She also started a suit against George A. Carter, which is count 3, charging him with negligence, which proximately contributed to her injuries. She also started a suit against the State Farm Mutual Automobile Insurance Company, count 1, which is for medical expense. This claim against the insurance company was settled before trial, so we are not concerned with this part of the complaint.

The plaintiff introduced evidence at the close of which George A. Carter made a motion for a directed verdict. Before the court passed on the motion, the plaintiff dismissed the suit as to George A. Carter.

540

John Early as administrator, etc., made a motion for a directed verdict also, but his motion was overruled. The defendant then introduced some evidence, and the motion was again renewed, and the court overruled this motion. The case was submitted to a jury who found the issues in favor of the plaintiff and assessed her damages at $8,000. Two special interrogatories were submitted to the jury for their consideration, one in which they found the defendant's intestate, was guilty of wilful and wanton misconduct that was the proximate cause of plaintiff's injuries, and the other was that the plaintiff herself was not guilty of wilful and wanton misconduct that proximately caused her injuries. Judgment was entered on the verdict and this appeal follows. It is insisted strenuously by the appellant that the evidence does not sustain the finding of the jury, that Michael Kazunas was guilty of wilful and wanton misconduct that was the proximate cause of the plaintiff's injuries.

The evidence is, that Kazunas left Rockford about 6:25 a. m. and at that time it was snowing; that Kazunas had his windshield wiper going; that the occupants in the back seat could plainly see the road ahead. All evidence is to the effect that there was snow on the ground, and that the edge of the pavement was not visible on that account. The evidence is conflicting as to whether there was any ice on the pavement at the time of the accident, or whether the snow was just slushy. There is evidence that farther north several cars had skidded off of the pavement. Just what caused the accident, no one really knows. Just before the accident occurred, the mother-in-law and the plaintiff were busy adjusting robes and pillows, and did not see the approaching car, or know what caused the accident. George A. Carter was called as an adverse witness for the plaintiff and testified that he saw the car coming, but there was nothing to attract his attention to it,

541

until it appeared to him it went off of the side of the pavement, and then turned directly across the hard-road into the path of his car. At what speed it was traveling, he had no idea, as the accident occurred so quickly.

Mrs. Anna Misukanis, the mother, testified as a witness for the plaintiff and she could not give any idea of how fast the car was traveling. One time she would say perhaps thirty-five or forty miles an hour, but didn't know. She did not know whether the road was slippery or not. She did say however, in answer to a question "whether Mike was driving all right that morning." Answer, "yes, he would drive all right always; a good driver he was."

Over the defendant, John Early's objection as administrator, etc., Vernie Thillman was permitted to testify as to how the accident occurred, and the rate of speed that defendant's intestate was driving prior to the time of the accident. The court cautioned the jury that this evidence could not be taken as against John Early as administrator, but was introduced solely for the purpose of proving plaintiff's case against George A. Carter. Except for two witnesses called for identification of some photographs, Mrs. Thillman was the last witness called for the plaintiff. At the close of the evidence the defendants each entered their motion for a directed verdict, and the plaintiff's attorney then dismissed the suit as against George A. Carter. The court again admonished the jury that the evidence given by Vernie Thillman had been excluded from the jury entirely, and they should not consider it in connection with the case.

After this testimony was stricken, there is not one word of testimony in the record, of the speed at which the Kazunas car was being driven at the time of this fatal accident. It is argued by the appellee that the photographs of the two cars alone sufficiently show

that the Kazunas car was being driven at a wilful and wanton rate of speed. The photographs show that the car being driven by George A. Carter struck the right side of the Kazunas car. On the Kazunas car, the lights, the grill, bumper and wheels of the front end of the car were not damaged, but the right side is terribly crushed. The front end of Carter's car was badly damaged. Carter's evidence is, that he was driving at the rate of twenty or twenty-five miles an hour. The Kazunas car must have been headed in a westerly direction at the time the Carter car drove into its side.

We are aware that numerous courts have held that photographs of wrecked cars, etc., have been properly introduced in evidence, as tending to show the rate of speed at which the vehicles have been driven at the time of collisions. Our attention has not been called to any case where courts have held that by viewing the photographs of wrecked vehicles alone, you could conclude that one of the parties was driving at such rate of speed that it could be deemed wilful and wanton misconduct. We do not think in this case that the plaintiff has proven any wilful and wanton misconduct on the part of Michael Kazunas relative to the rate of speed he was driving at the time of the accident.

The only evidence of how this accident occurred is from George A. Carter. He said so far as he could see, the Kazunas car was coming in a normal manner, until it appeared to him it got off of the pavement then he attempted to get it back onto the pavement and he lost control of the car and it cut across the pavement in front of him. From the damage done to the cars; namely, the front end of Carter's car being so badly damaged, and the side of the Kazunas car also being badly damaged, this seems to be a logical conclusion of how this accident occurred. If so, we do not believe that this could be said to be wilful and wanton misconduct on the part of Michael Kazunas.

543

██ We are aware of the fact that in answer to the special interrogatory whether Kazunas was guilty of wilful and wanton misconduct at the time of this accident, has been answered by the jury in the affirmative, and their finding should be given due consideration. At the time Vernie Thillman gave her testimony, the court properly allowed her to testify, as George A. Carter was then a defendant in the suit. When the plaintiff dismissed the suit as to Carter, the court admonished the jury not to consider her evidence at all, as against the Kazunas estate. What effect this testimony had on the jury, is only conjectural, but after a witness has testified, it is difficult for the ordinary juror, not to consider all of the evidence that has been given before them. We can come to no other conclusion but that this testimony was prejudicial to the defendant.

██ The court refused defendant's instruction No. 3, which is as follows: "The Court instructs the jury that before the jury could return a verdict against the defendant, John Early, as administrator of the estate of Michael Kazunas, deceased, under the charge of the complaint against him, that Michael Kazunas drove and operated his automobile at a speed greater than was reasonable and proper with regard to the traffic and the use of the way, the jury must believe from a preponderance or greater weight of the evidence in this case, that the speed at which Michael Kazunas was driving his automobile, just before and at the time of the accident, was such that it exhibited an intent on the part of Michael Kazunas to injure the plaintiff, or that it was such that it exhibited a reckless disregard for the safety of plaintiff." It will be observed that the court evidently refused to give this instruction on account of the words "singles out fact of speed." The main contention in this lawsuit was whether the rate of speed at which Kazunas was

driving amounted to wilful and wanton misconduct, which was the proximate cause of this injury. Under the pleadings in the case, we think it was error to refuse to give this instruction.

■ Defendant's refused instruction No. 4, is as follows: "The Court instructs the jury that if you believe from a preponderance or greater weight of the evidence in this case, that just before the accident in question in this lawsuit, the automobile in which the plaintiff was riding and which was being driven by Michael Kazunas skidded upon the highway, such fact, if you believe it to be a fact, would not of itself be sufficient upon which a verdict against the defendant John Early, as administrator of the estate of Michael Kazunas, deceased, could be based.

"And in this regard, the court instructs the jury that before you could regard such skidding as a basis for a verdict against said defendant, you must believe, from a preponderance or greater weight of the evidence in this case, that such skidding was a result of wilful and wanton acts on the part of Michael Kazunas in the driving and operating of his automobile, just before and at the time of the accident in question. (Refused.) (Singles out fact of skidding.)" Skidding was also one of the material questions in the case and without it, according to the evidence in this case, the plaintiff could not recover. We think the court erred in refusing to give this instruction.

■ Defendant's refused instruction No. 5, is as follows: "The court instructs the jury that in determining whether Michael Kazunas, intestate of the defendant John Early, as administrator of the estate of Michael Kazunas, deceased, was guilty of wilful and wanton conduct in the driving and operating of his automobile, just before and at the time of the accident in question in this lawsuit, you have a right to take into consideration the instincts of self-preservation

545

which are natural to all men. (Refused.) (Does not apply except in no eyewitness case.)'' We find no case where this proposition of law has been given in an instruction to the jury. In commenting on the weight of the evidence in the case of *Madison v. Essington,* 306 Ill. App. 607, this court did use similar language, and cited the case of *McGuire v. McGannon,* 283 Ill. App. 293. We are inclined to believe that the court did not err in refusing to give this instruction.

Mr. Ferg Herzog, a photographer, of Rockford, Illinois, was served with a subpoena duces tecum to bring negatives of pictures into court, which he had taken of the wrecked cars shortly after the collision occurred. Mr. Herzog was employed by someone else aside from the plaintiff to take these pictures, and no prints had been made from the negatives. An objection was made to the introduction because the negatives did not belong to the plaintiff. After they were offered in evidence, the following occurred: ''Mr. Burrell: We offer these in evidence, subject to those limitations which we will remedy; it will take us about a half an hour to get prints of these negatives and of course we will endeavor to connect up as to the identification of the cars. Mr. North: That is, assuming he has the right to make the prints of somebody else's property. The Court: The negatives will be admitted in evidence and Mr. Herzog may make prints of them for the convenience of the court and the jury. Mr. Haye: On behalf of the defendants I object to the admission of the prints or rather of the negatives and the making of any prints from them. The Court: Objection overruled. The court feels that, for the benefit of the court and the jury prints ought to be made of the negatives. Mr. Burrell: Right away. A. We can start them. Do they have to be dry? Mr. Burrell: They have to be capable of being handled. Can't you make the prints

in half an hour? The Court: Well, when you get them done, bring them back. They are only for the convenience of the court and the jury, for the purpose of more easily interpreting the photographic scene that is shown in the negatives. A. All right.''

It will be observed that the photographs in question were very material to the issues in this case, and as before stated, it is the only evidence which tended to show excessive speed at which the Kazunas' car was being driven at the time of the collision. The jury could very easily have believed that the court was emphasizing the value of the photographs, as evidence in the case.

The last paragraph of appellee's argument is as follows: ''In his conclusion, appellant accuses the trial court of unfairness, ending a long and personalized argument on the same note with which it began. We are supposed to believe that a poor administrator stands before this court having been outdone by superior powers. It is sobering to recall that the record plainly discloses that this argument is made by the State Farm Mutual Automobile Insurance Association speaking through the lips of John Early as administrator. It is an insurance company which even fails to discharge its contractual obligations arising under its medical endorsement. 'The voice is Jacob's voice, but the hands are the hands of Esau.' '' Appellant strenuously objects to this argument, as it accuses the attorneys for the appellant of unfair practice. We think appellee's argument is wholly uncalled for, and has no effect whatsoever on the judgment of this court.

██ We have read all the evidence found in this record, and under the circumstances shown to have existed at the time this accident happened, we can come to no other conclusion but that the charge of wilful and wanton misconduct on the part of defendant's

intestate has not been proven. The judgment of the trial court is hereby reversed and the cause remanded.

*Reversed and remanded.*

DOVE, J. I concur in reversing the judgment in this case and remanding the cause. Instruction No. 4, I think, was properly refused.