Jeanette Buser Meade, Plaintiff-Appellee v. Patsy Robinson, Defendant-Appellant.

Gen. No. 9767.

Opinion filed June 7, 1951. Rehearing denied September 4, 1951. Released for publication September 4, 1951.

CRAIG & CRAIG, and ALONZO CHURCH, all of Mattoon, for appellant; J. H. ANDERSON, and L. J. KABBES, both of Mattoon, of counsel.

RYAN & AUSTIN & JOHN P. KURTOCK, of Mattoon, for appellee; WILLIS P. RYAN, of Mattoon, of counsel.

MR. JUSTICE DADY delivered the opinion of the court.

Plaintiff, Jeanette Buser Meade, obtained a verdict and judgment against defendant-appellant, Patsy Robinson, for $7,500. Defendant makes no contention that the verdict or judgment is excessive.

As to the pleadings, we consider it sufficient to say that the complaint alleged that, on November 28, 1948, plaintiff at invitation of defendant was riding as a passenger in an automobile driven by defendant, that plaintiff was at all times not guilty of any wilful or wanton misconduct on her part, and that through the wilful and wanton misconduct of defendant in driving the car the plaintiff was injured. Defendant's answer admitted that plaintiff was riding as such passenger, denied that plaintiff was not guilty of any wilful or wanton misconduct, and alleged that defendant was not guilty of any wilful and wanton misconduct.

The plaintiff at the time of the accident, aged about 17 or 18 years, the defendant, then aged about 17 years, and Donna French, then aged about 17 years, were the only occupants of the car defendant was driving, and the only eyewitnesses to what occurred at the time of and immediately before the accident· They were close friends, plaintiff and defendant being cousins. Their homes were about the distance of a city block apart and located in the country. Plaintiff had no control over the management of the car.

On November 28th, about 1:00 p. m., defendant drove a car, owned by her parents, to the home of plaintiff. Plaintiff and Donna then got in the front seat, plaintiff sitting in the middle, and Donna on the right. It was their intention to take clothes and other belongings of plaintiff and defendant to a school they were attending some few miles distant.

Defendant then drove the car west about a half mile on a country road, and then turned and drove south about one mile on an unpaved but oil surfaced

road to a bridge with which the car collided, causing the injuries to plaintiff.

Plaintiff testified that she had driven a car for about four years, that as they were going south it was snowing and misting and the road was "slick and rough," that the snow melted as it hit the ground and there was no snow on the road, that the mist did not obscure her vision and she could see "perfectly well," that as "you approach the bridge there is a hump in the road and then it goes down into a valley and then it goes up a sharp incline to the bridge, . . . just wide enough for one car," that the hump in the road was about five hundred feet north of the bridge, that as they drove south the defendant was driving between 45 and 50 miles per hour and at the same speed as they approached the hump, that as they went over the hump the defendant applied the brakes "and we started swerving from one side of the road to the other all down in this valley, and then as we came up the incline Pat applied the brakes again and then we hit the left side of the bridge with the front of the car when going between 40 and 45 miles per hour," that the car skidded from one side of the road to the other from the time the defendant applied the brakes until they hit the bridge, that as they were driving south over the road and as they passed over the hump, and before the impact with the bridge, the plaintiff "was dialing the radio most of the time, it was static," and "she was trying to get" a football game, that after the car started skidding defendant said "Jeannette, what am I going to do," and plaintiff looked up and said "hit the bridge," that she probably stopped dialing when "we started skidding and I looked up and saw we were going to hit," that before the accident she had been over the road "thousands of times" and had ridden over that road many times in cars the defend-

193

ant was driving, that the oiled strip down the center of the road was just wide enough for one car, that the center of the road came up to a point about two inches higher than the edges, that the road was oiled no later than the summer before and the oil was hardened, that the road was ''just rough, you know, bumpy, it wasn't great big holes, . . . just rough,'' and that she knew it had been just as rough for a long period of time.

She further testified that so far as she could remember she said nothing to defendant about driving more slowly or about the condition of the roadway or about proceeding with more caution, and didn't know of any danger ''until we began to slide.''

Donna French, as a witness for plaintiff, testified it was misting and snowing as they came out of defendant's house, that ''you could see out of the windshield good, and it was not cloudy or anything,'' and the windows were clear, that the road had a crown and was ''rough,'' that as they were going south defendant was driving about 55 miles per hour, that there was a hump in the road and then it dipped down and then went up sharp to the bridge, that as one approaches the bridge the road was just wide enough for one car, that when approaching the hump they were going at the same speed, that the road was wet and slippery and as they passed over the hump the car started to slide and the defendant applied her brakes and ''we kept on sliding and weaving on the road,'' but the car did not slow down any, and never stopped weaving, and when they hit the bridge they were going 45 miles per hour, that she remembered the plaintiff saying ''Hit the bridge,'' but did not remember the plaintiff saying anything about the speed of the car or the condition of the road, and that plaintiff was dialing the radio to get a football game and continued dialing until the collision.

The only other witness for plaintiff, except the attending physician, was Robert Armentrout, who was a

194

brother-in-law of plaintiff. He testified that his home was about 1200 feet north of the hump, that between his home and the hump there was a three or four-foot swag, and there was another swag between the hump and the bridge, that on the day in question he was looking out of the window of his home and saw defendant's car pass by going 60 miles per hour, that the road had a crown of probably six inches and that he "would say the road was rough."

Defendant was defendant's only witness. She testified that she had been driving a car for about three years off and on before the accident, that shortly after they left plaintiff's home it began snowing and misting and the snow melted as it hit the ground, that from the time she turned south they were going about 40 miles per hour, but could have been going faster, that as they drove along plaintiff was dialing the radio, and the radio was on, that after going over the hump her car began to slide, that it all "happened so quickly" she did not remember if she applied her brakes, that when the car started to slide she asked the plaintiff what she should do and the plaintiff said to try to go on across the bridge, and she tried to cross the bridge but did not quite make it, and they were then going about 35 miles per hour.

There is no evidence tending to show the height of the "hump."

Defendant contends the court erred in denying her motion for a directed verdict in her favor at the conclusion of all of the evidence, in denying her motion for a judgment in her favor notwithstanding the verdict, and in denying her motion for a new trial.

Defendant's motion for a judgment for defendant notwithstanding the verdict, and for a new trial, stated there was no evidence that defendant was guilty of wilful or wanton misconduct, that there was no evidence that plaintiff was without contributory or wanton misconduct, and no evidence tending to prove the mate-

rial allegations of the complaint. Defendant's motion for a new trial also stated the court erred in the admission and rejection of evidence, and in giving and refusing instructions.

At the request of defendant the court submitted the following interrogatory: "Did the defendant . . . operate the automobile . . . in a wilful and wanton manner which contributed to the injury for which said action is brought?" The jury's answer was, "Yes." No motion was made by defendant to set aside this finding, and no error has been assigned thereon, and the question of the propriety of such finding was not raised in the motion for a new trial or in the motion for judgment notwithstanding the verdict.

Plaintiff contends that, in such state of the record, defendant is conclusively bound by such special finding of the jury, and cites *Brimie v. Belden Mfg. Co.,* 287 Ill. 11, 15, wherein the court said: "It has been held by this court that the defendant is conclusively bound by a special finding of fact such as is here involved unless error has been assigned thereon and the question has also been raised on the motion for a new trial. (Citing cases.) No motion was made by plaintiff in error to set aside this special finding of fact in the trial court nor was any error assigned thereon, either in the Appellate Court or this court. It is, however, contended here that the question was preserved by motion made by plaintiff in error in the trial court requesting that court to direct a verdict for plaintiff in error, and was also preserved in the motion for new trial by the general objection that the verdict was contrary to the weight of the evidence. Under the rulings of this court neither of these points can be sustained." (See also *Brant v. Chicago & Alton R. Co.,* 294 Ill. 606, 615; *Taake v. Eichhorst,* 344 Ill. 508, and *Rubottom v. Crane Co.,* 302 Ill. App. 58.)

However, in the *Brimie* case the court, after using the language quoted, then said: "Counsel for plaintiff in error argue that the special finding is wholly unsupported by the evidence, and that therefore, under the rulings of this court, (citing cases) the motion to direct a verdict raised the question as to whether the special interrogatory and finding were supported by the evidence. We cannot agree with counsel that there is no evidence in the record that tends to show that the machine in question could be properly safeguarded."

In view of the fact that in the *Brimie* case the court did consider and pass on the question of whether there was any evidence to support the special finding, we will consider and pass on such contentions of defendant.

In *Bartolucci v. Falleti,* 382 Ill. 168, 174, the court said: "Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness."

Considering all of the evidence, in its aspect most favorable to plaintiff, as we are now required to do (see *Merlo v. Public Service Co.,* 381 Ill. 300, 311), it is our opinion that we cannot properly say or find as a matter of law that there was no evidence fairly tending to support such special finding of the jury.

197

██ In our opinion the evidence would justify the jury in believing the defendant had knowledge of and saw the rough and slippery condition of the road and had knowledge of the existence of and saw the hump, that she lost control of the car by reason of deliberately going over the slippery hump at a speed of about 45 to 50 miles per hour, that in so doing she was conscious from her knowledge of the surrounding circumstances and existing conditions that her conduct would naturally and probably result in injury, and that she was guilty of such an intentional disregard of a known duty necessary to the safety of the plaintiff, and of an entire absence of care for the life and person of plaintiff, such as exhibited a conscious indifference to consequences.

██ It is also our opinion that we cannot properly say or find as a matter of law that there was no evidence fairly tending to prove that the plaintiff was not guilty of wanton or wilful misconduct on her part that contributed to her injury. Such question was one particularly within the province of the jury to pass on. (See *Dees v. Moore,* 335 Ill. App. 318; *Chapman v. Baltimore & O. R. Co.,* 340 Ill. App. 475.) It is also our opinion that we cannot properly say or find as a matter of law that there was no evidence fairly tending to prove the allegations of the complaint.

The only complaints assigned as to the admission or rejection of evidence are the following:

Plaintiff on direct examination testified that the distance from the "hump" to the bridge was about 500 feet. On cross-examination it was brought out that on a pre-trial deposition she had testified it was 150 feet. On redirect examination she was permitted over objection to state that she had changed her mind.

On cross-examination plaintiff testified that she had driven a car less than a year and did not look at the speedometer. She then, in answer to a question, stated,

"Well, I had been riding in cars all my life, and I think I could judge that." The defendant "disclaimed" the answer and defendant now says the court erroneously failed to allow the disclaimer. There was no material conflict in the evidence as to the speed of the car at all times.

Defendant introduced three photographs of the road. The photographer testified he took the photographs on February 3, 1950, and that there were no changes in the condition of the physical objects shown in the photographs since November 28, 1948, but that he "couldn't swear to the smoothness of the road."

In rebuttal Armentrout, as a witness for plaintiff, without objection so far as the abstract shows, testified that in his opinion the photographs were not a fair representation of the road. Defendant's motion that such answer be stricken as being merely an opinion was denied.

We consider it sufficient to say there was no reversible error in such rulings.

We do not consider there was any error in the giving of the one instruction complained of.

It is our opinion that as the case is presented no reversible error is shown.

The judgment of the trial court is affirmed.

*Affirmed.*