**Rubye BARNES and Clyde Barnes (Plaintiffs), Respondents,**

v.

**Mildred Louise LACKEY (Defendant), Appellant.**

**No. 46854.**

Supreme Court of Missouri,

Division No. 1.

Jan. 12, 1959.

Oliver & Oliver, Gerald B. Rowan, Cape Girardeau, for appellant.

Blanton & Blanton, Sikeston, for plaintiffs-respondents.

VAN OSDOL, Commissioner.

In this action on a claim stated in two counts plaintiff Rubye Barnes and her husband plaintiff Clyde Barnes had verdict and judgment against defendant Mildred Louise Lackey for $25,000 for personal injuries to the wife and $5,000 for the husband's loss of the wife's services. Defendant has appealed.

Plaintiff wife sustained injury when the automobile driven by defendant overturned near the northerly end of Jany's Curve on Illinois State Highway No. 3, approximately three miles north of Chester, Illinois. Plaintiff wife (hereinafter referred to as "plaintiff") and four other ladies were nonpaying guests of defendant who was driving the automobile, a 1955 Oldsmobile, in the progress of a journey from McMullin, Missouri, a point north of Sikeston, to St. Louis over U. S. Highway No. 61, Missouri State Highway No. 51, and Illinois State Highway No. 3. Plaintiffs' case was stated on the theory of injury due to the wilful and wanton misconduct of · defendant in driving the automobile into a curve.

Defendant-appellant contends plaintiffs failed to make out a case submissible to the jury. It is said there was no proof that defendant was guilty of wilful and wanton misconduct as defined by Illinois law; and no proof that plaintiff was exercising due care at and prior to the time the automobile went into the curve and overturned, or rather no proof that plaintiff was free from contributory wilful and wanton misconduct at and prior to the time of the casualty. Other errors of the trial court are contended in giving plaintiffs' principal verdict-directing Instruction No. 1, and in rulings upon defendant's objections to argument of plaintiffs' counsel.

There was substantial evidence tending to show that in moving northwardly over Illinois State Highway No. 3 from Chester in the approach to Jany's Curve the highway traveler moves slightly upgrade on a pavement of concrete and to the traveler's right there is a post with sign displaying a curved arrow indicating a curve to the right. The rate of speed indicated on the sign is "45 M.P.H." This 45 M.P.H. sign is approximately 500 feet from the southerly end of Jany's Curve, which is 842.3 feet long, the degree of curvature to the right being 5° and 40'. Approximately 200 feet north of the 45 M.P.H. sign there is a "No Passing Zone" sign and near this latter sign the concrete pavement ends, and then the highway is paved with asphalt

northwardly to, through and beyond Jany's Curve. Wet asphalt is "more slick" than wet concrete. From the "No Passing Zone" sign northwardly to the point where the highway begins to curve to the right, the highway is straight; there is a slight incline or grade, less than one per cent, to the crest south of the curve; thence, in proceeding in near approach to the curve, the highway traverses a slight decline. In approaching the junction of the concrete and asphalt from the south, one can see the asphalt from "depending on your weather conditions, but a couple or three hundred feet."

At seven o'clock in a March morning the party of six—plaintiff, defendant, and four other ladies—met at McMullin and proceeded over the stated highways to Chester. Plaintiff was seated on defendant's right in the front seat of the Oldsmobile, and another of the party was seated on plaintiff's right; the other three were seated in the rear.

The distance from McMullin to Jany's Curve is eighty-five or ninety miles and defendant and her guests stopped at several points along the highways in Missouri and at the toll station at the bridge over the Mississippi. It began to drizzle just before the party reached the bridge, and the windshield wipers were turned on. The drizzling rain continued until the party reached the scene of the casualty. The surface of the pavement was wet.

Plaintiff testified that defendant drove the Oldsmobile at a speed of between sixty and sixty-five miles per hour up the hill (in the approach to Jany's Curve)—"she maintained her speed and did not slow for the hill * * * and as we topped the crest of the road * * * she didn't slow." And "when we got up on top of the hill and went into the curve, she didn't make the curve but she went over on the left side of the road and she started grabbing for the wheel and trying to cut it, and then she wobbled along on the road and then she crossed back onto our side, and then she went too far that way and she started turning again and in a skid and started trying to get hold of the car again and we were going on down the road, and we whipped around as we left the side of the road and I don't remember anything else, and I must have got a whip lash * * *." Having veered from side to side on the pavement entirely through the length of the curve, defendant's vehicle overturned and came to rest upside down entirely off the pavement on the west side of the highway with the front end headed southwardly. The right rear tire was "flat," and grass and dirt were between the tire and rim.

One of the ladies, who was seated on the left in the rear seat behind defendant, testified, "I will say positively she (defendant) went up on the curb on the side of the road and this caused the car to swerve to the far side of the road, and at that time, it seemed as though the car was completely out of control and the next thing I knew we had gone into the ditch * * * the car first hit the lip or curb on the right hand side of the road." Plaintiff also had testified that when the car got to the blacktop "that was where * * * the car went out of control * * * not exactly the minute, but she went into a skid."

Plaintiff had not seen the curve sign, and had not warned defendant to reduce speed. Plaintiff said she thought defendant was a careful driver. Neither had defendant observed the sign. Plaintiff testified, as stated, that defendant continued her approach at a speed of sixty to sixty-five miles per hour. Defendant had made the statement that the automobile was moving between fifty and fifty-five miles an hour. Defendant was familiar with the highway (No. 3); she had gone over it on numerous occasions during the three or four years preceding the casualty. Defendant also had stated she knew the 45 M.P.H. sign was there, but she "didn't put my brakes on." That same day, defendant entered a plea

of guilty to the charge of driving a motor vehicle "at a speed too fast for conditions."

We shall have occasion to state more of the facts in the further course of the opinion.

■ Under Illinois statute plaintiff, a nonpaying guest, may not recover for her injuries save and except upon the causal wilful and wanton misconduct of defendant. Ill.Rev.Stat.1955, ch. 95½, par. 58a; now, with some language added, Ill.Rev.Stat. 1957, ch. 95½, § 9–201; S.H.A. ch. 95½, § 9–201. "Wilful and wanton misconduct has been defined in myriads of cases each one reiterating or embellishing the phraseology of its predecessors. Streeter v. Humrichouse, 357 Ill. 234, 191 N.E. 684; Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 69 N.E.2d 293; Mower v. Williams, 402 Ill. 486, 84 N.E. 2d 435; Myers v. Krajefska, 8 Ill.2d 322, 328, 134 N.E.2d 277. One often quoted definition is that set forth in Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, at page 583, 69 N.E.2d 293, at page 300: 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' In the recent case of Myers v. Krajefska, 8 Ill.2d 322, 134 N.E.2d 277, this court refused to overrule that definition. The court noted that although there are some variations in the phraseology of the definitions of wilful and wanton misconduct in the cases, the basic concept as applied in the case law is the same, and since such conduct is usually a matter of degree, no hard-and-thin-line definition could be made." Hering v. Hilton, 12 Ill.2d 559, 147 N.E.2d 311, 313.

We have recognized the rule announced by the Illinois courts in defining wilful and wanton misconduct quite as was stated in the Schneiderman case in our own case of Boehrer v. Thompson, 359 Mo. 465, at page 471, 222 S.W.2d 97, at page 99.

■■ In the instant case, in determining whether the issue of wilful and wanton misconduct of defendant should have been submitted to the jury, we must measure defendant's conduct by that standard as expressed in the Illinois rule. However, in so doing we do not consider the conflicts in the evidence, nor its weight or preponderance, nor the credibility of witnesses, but must take that evidence as true which is most favorable to plaintiffs' claim. If such evidence and its intendments most favorable to plaintiffs tend to establish wilful and wanton misconduct of defendant, then we will say the trial court properly submitted plaintiffs' case to the jury. Hering v. Hilton, supra; Schneiderman v. Interstate Transit Lines, Inc., supra.

■ Considered from a standpoint most favorable to plaintiffs, the evidence justifies the findings that defendant, operating and in control of the Oldsmobile, drove it up and over the incline and crest of the hill, passing the "curve" 45 M.P.H. sign, in a known approach to Jany's Curve at a speed of sixty to sixty-five miles per hour, through the drizzling rain on a wet pavement. It reasonably may be inferred defendant was familiar with the highway and knew of the juncture of the concrete and asphalt surfacings of the highway near the crest of the hill and of the asphalt surfacing of the highway on through the curve beyond. She said she did not see the sign denoting the speed at which the northbound traveler could with some assurance safely traverse the curve, of which curve she, it may be inferred, must have known. She, nevertheless, admitted she knew the sign was there; and, ignoring it and the obviously attending wet weather and road conditions, she did not reduce the speed of her

vehicle or bring it under control or manage its movement in such a way as to guard against the potential danger in traversing the critical curve, which movement in the circumstances and conditions it reasonably could be said she should have known portended likely disaster when moving at a speed which even she admitted was "too fast for conditions." It does seem to us that plaintiffs made out a case submissible to the jury based upon defendant's wilful and wanton misconduct as defined by Illinois law.

We have been cited no case wherein the facts are quite like those of our case; but the reasoning on the facts obtaining in the following cases supports our conclusion. Ashby v. Irish, 2 Ill.App.2d 9, 118 N.E.2d 43; Signa v. Alluri, 351 Ill.App. 11, 113 N.E.2d 475; Meade v. Robinson, 344 Ill. App. 189, 100 N.E.2d 400; Levanti v. Dorris, 343 Ill.App. 355, 99 N.E.2d 398; Lawson v. Fisk, 316 Ill.App. 591, 45 N.E.2d 707; Chase v. Tomlin, 309 Ill.App. 648, 33 N.E.2d 754.

As stated in Mower v. Williams, 402 Ill. 486, 84 N.E.2d 435, 436, in determining "whether or not there has been wilful and wanton conduct in any given case necessitates close scrutiny of the facts as disclosed by the evidence, and while the rule of law does not vary, the facts to which the law is applicable always present divergent circumstances and facts which, in most instances, are wholly dissimilar." Now we shall pause to point out the divergency and dissimilarity of circumstances and facts in some of the cases cited and relied upon by defendant when such circumstances and facts of such cases are contrasted with those of our case.

In Clarke v. Storchak, 384 Ill. 564, 52 N.E.2d 229, 238, defendant Storchak was driving at a speed of forty-five miles per hour and his car suddenly turned to the left; proceeded out of control for approximately 300 feet; crashed through wire-netted railing; and plunged down into an underpass. Storchak had not reduced speed and had not applied the brakes. But, it was not shown there were other circumstances "which would require the driver of an automobile to be on his guard" or which would render the shown speed sufficiently dangerous to establish wilful and wanton conduct. The failure of Storchak to apply the brakes was not enough without sufficient attending circumstances to show wilfulness and wantonness. The Clarke case supports the doctrine that proof of unlawful speed does not necessarily establish wilfulness or wantonness, neither is the failure to apply brakes; but the case also tends to support the rule that movement at unlawful speed or the failure to reduce speed by the application of brakes may be taken into consideration together with the attending circumstances of a given case. It would appear that the true rule in Illinois is that speed is a circumstance which may be taken into consideration by the jury "as bearing upon the presence of willful and wanton conduct, and in a given case might of itself establish willful and wanton conduct, taking into consideration the degree of speed with reference to all other surrounding facts and circumstances." Signa v. Alluri, supra, 351 Ill.App. 11, 113 N.E.2d 475, 478.

In Thillman v. State Farm Mut. Automobile Ins. Agency, 340 Ill.App. 538, 92 N.E.2d 346, the only evidence was that the Kazunas car was moving in a normal manner until it got off the pavement and when the driver attempted to get it back onto the pavement he lost control of it and it cut across the pavement in front of the Carter car. There was no evidence, it seems, tending to show the rate of speed at which the Kazunas car was moving, and, consequently, no evidence of speed so excessive in the shown attending circumstances of the case as to justify a finding of wilful and wanton misconduct on the part of Kazunas.

In Celner v. Prather, 301 Ill.App. 224, 22 N.E.2d 397, the evidence showed that it had been raining and the highway, at and near the scene of the casualty, a winding

road. The automobile was totally wrecked and its occupants were injured—the driver fatally injured. The car had struck a concrete abutment with great force. There was nothing in evidence to disclose in what manner the automobile had been operated. Whether the casualty was the result of deceased's wilful and wanton conduct, or whether it might have resulted from mechanical causes connected with the car, or was the result of deceased's negligent conduct, could not be reasonably determined from the evidence.

In the instant case defendant would seek to inject a decisive inference that the casualty was caused by the deflation of the right rear tire which was found to be "flat" after the vehicle had come to rest north of Jany's Curve, but there was no evidence of a "blowout" prior to defendant's loss of control of the vehicle, and it may be as readily inferred that the tire was thrust from its seat in the rim and deflated by the sidewise movement of the machine across the pavement or in overturning on the earthen surface west of the pavement. And, in our case defendant seeks to avail of the testimony, noted supra, of a witness for plaintiffs that the defendant's automobile first struck the lip of the pavement causing the car to get out of control. But plaintiff wife did not so testify. The inference from her testimony was to the contrary. She testified that defendant did not slow down and failed to make the curve. Although plaintiff said the car went out of control when it was at the juncture of the concrete and asphalt surfacings of the highway, she said that it was not "exactly the minute." The testimony considered from the standpoint favorable to plaintiffs was that the car went out of control when it was moved too fast onto the wet asphalt and into the curve, which fact, a jury could reasonably infer, was due to defendant's failure to reduce speed or in proceeding at an excessive speed in the circumstances of her approach to and into the known curve over the wet surface of the pavement. We think the jurors, reasoning

from shown evidentiary bases, had the province and prerogative of resolving reasonable inferences.

Attending the contention that plaintiffs' case was not submissible because of the asserted failure of plaintiffs to show that plaintiff wife was free from wilful and wanton misconduct—we shall treat with this contention in connection with our examination of the contentions of error in giving plaintiffs' principal verdict-directing Instruction No. 1.

Instruction No. 1 defined the term "wilful and wanton misconduct" in language substantially as quoted from Schneiderman v. Interstate Transit Lines, Inc., supra, and the instruction continued in hypothesizing and requiring the findings of the location and direction of Highway No. 3 north of Chester; the movement of defendant's vehicle over such highway; the overturning of the vehicle; and "that plaintiff * * * was free from wilful and wanton misconduct." The instruction continued in hypothesizing and requiring the findings of the locations of the two signs and of the legends thereon confronting the northbound traveler in approaching the vicinity of the curve; and the instruction further continued as follows, "and that just beyond and north of said signs the road curved to the right and went downhill for northbound traffic and that the traveled surface of said roadway on said curve was surfaced with asphaltic concrete or blacktop and that the said car being driven by said defendant passed the said signs and that the defendant carelessly and recklessly failed to observe said signs when by the exercise of ordinary care she could have so observed them, and that the surface of said roadway immediately south of said curve and on said curve was wet, and that the said car being driven by the defendant as it passed the said signs and entered into the said curve was being driven at a speed in excess of 45 m. p. h. and that said speed was excessive and created an impending danger under the circumstances that you find from the evidence were then and there

present, and further find that the defendant knew that said speed under said circumstances would have created impending danger or that she carelessly and recklessly failed to discover said danger when by the exercise of ordinary care she could have known of said danger, and could have prevented it by slackening the speed of the said car she was driving prior to entering said curve, and that she carelessly and recklessly failed to do so, and if you further find that said conduct on the part of the defendant evidenced a reckless disregard for the safety of others, including the plaintiff * * * and further find that such conduct on the part of the defendant constituted wilful and wanton misconduct, and that said conduct directly caused the car the defendant was operating to leave the traveled portion of said highway and overturn and injure the plaintiff * * *, then you will find the issues in favor of the plaintiff * * *."

Defendant initially asserts there was no evidence supporting the submission that plaintiff was free from wilful and wanton misconduct; and that, moreover, the instruction was faulty in failing to require the finding that plaintiff was free from the *same* wilful and wanton misconduct as the jury was authorized by the instruction to find was defendant's.

■■■ It has been said that since, under Illinois law, wilful and wanton conduct of a plaintiff guest is a complete defense, a plaintiff guest must allege and prove he was not guilty of the same fault charged to defendant. Valentine v. England, 6 Ill.App.2d 275, 127 N.E.2d 473. This is the rule, it seems, where the driver and guest are confronted by the same conditions, whatever they were, so that the same facts cannot be used to establish guilt of one and innocence of the other. Valentine v. England, supra. As a qualification of this, we look to the fundamental proposition that defendant, and not plaintiff, was driving. That plaintiff had an equal op-

portunity to see the signs indicating a curve as well as the physical condition of the approach is a factual assumption. A driver synchronizes his speed to the time, place and duration of his observation, not to that of his passenger. The driver is enabled to make his observation at as slow a speed as he finds necessary, and the observation and the slow speed can both be prolonged until he is satisfied. Not forewarned as to what will be the minimum speed, nor the duration of it, the passenger makes his observation under difficulties. It is disconcerting to a driver to have a passenger suggest how he shall drive. Unless the passenger sees an obvious danger which the driver might not see, there is no duty on the passenger to warn the driver. Chapman v. Baltimore & Ohio R. Co., 340 Ill. App. 475, 92 N.E.2d 466; Kunz v. Larson, 15 Ill.App.2d 126, 145 N.E.2d 746. In the instant case, plaintiff believed defendant was a careful driver, and could assume that she was looking carefully. Plaintiff could not have known defendant was not exercising due care in watching out, or was operating the vehicle at a speed and in a manner that its speed could not be checked or reduced when the potential danger in the approach was to be seen and realized and before the vehicle was committed to disaster. We think the proposition that defendant was driving with the correlative converse proposition that plaintiff had no control over the operation of the vehicle were sufficient factual bases in the facts and circumstances of this case for the submission and finding that plaintiff was not guilty of the same fault as was defendant. Kunz v. Larson, supra; Chapman v. Baltimore & Ohio R. Co., supra; Secrist v. Raffleson, 326 Ill.App. 489, 62 N.E.2d 36. And of the contention that the instruction failed to require the finding that plaintiff was not guilty of the *"same"* wilful and wanton misconduct as was submitted against defendant, it would be reasonably supposed that the hypothesis, submission and required finding that plaintiff "was free from wilful and wanton misconduct" were

all inclusive, and consequently, in effect required a finding of the negative of the same fault or wilful and wanton misconduct as was submitted as against defendant.

Defendant also complains of the hypotheses of the speed in excess of forty-five miles per hour when the Oldsmobile "entered into said curve," and of the wetness of the "surface of said roadway immediately south of said curve," all of which, says defendant, "would tend to mislead the jury into finding that the accident happened as a result of defendant's car going into a curve on a wet road at an excessive speed"; and it is asserted there was no evidence as to speed of the Oldsmobile except as it passed the "No Passing Zone" sign, which defendant says is seven hundred feet south of where the curve begins, and where, defendant says, the car got out of control by coming into contact with the "lip" of the pavement. We have the view that these contentions of defendant are founded on a misapprehension of the effect of the evidence when considered from the standpoint most favorable to plaintiff. As indicated supra, the jury was not required to believe the testimony tending to show that the casualty was caused by any contact with the lip of the pavement. And, as we have noted, there was evidence tending to show Jany's Curve began five hundred feet north of the 45 M.P.H. sign; consequently, it is readily inferred Jany's Curve began three hundred feet north of the "No Passing Zone" sign. It is true a witness for plaintiff testified the south end of Jany's Curve was at highway engineer's marked station "175 plus 10," and that the 45 M.P.H. sign was in the "general area" of station "166 plus 00." Upon the hypothesis that the 45 M.P.H. sign was actually located at the latter station, the south end of the curve would be nine hundred ten feet north of the 45 M.P.H. sign and seven hundred ten feet north of the "No Passing Zone" sign; and, generalizing, the witness so testified in effect. But, as stated, the witness said the 45 M.P.H. sign is in that "general area" —the witness was unable to "tell exactly where it is"—that is, in the general area of the station "166 plus 00"; but the witness testified that to the best of his knowledge the 45 M.P.H. sign is "approximately five hundred feet ahead of (south of) where the curve actually begins." Anyhow, we think the evidence that defendant's vehicle was moving sixty to sixty-five miles per hour at a point three hundred (or even at a point seven hundred feet as defendant says) south of the curve and moved on, out of control, through and beyond the curve more than eight hundred feet in length before overturning and coming to rest off of the pavement, would justify the submission and support the finding that the vehicle was moving in excess of forty-five miles per hour when it entered the curve. A permissible inference is obvious that defendant, ignoring the 45 M.P.H. sign and wet road conditions, drove the Oldsmobile in approaching at such speed that the car could not be so operated as to safely traverse the curve and overturned. And, examining the transcript for direct evidence supporting the hypothesis that the surface of the highway, immediately south of the curve, was "wet," we have read a question and answer—"Q. Tell the jury whether or not the surface way or road-way was wet or dry as you entered into this curve. A. It was wet."

Contentions of error in giving Instruction No. 1 are ruled adversely to defendant, and we hold the trial court did not err in submitting plaintiffs' case to the jury.

In the opening argument to the jury, plaintiffs' counsel said, "Now, at this time I am not going to discuss with you too much the details of the injuries and the pain and suffering sustained by my client, Mrs. Barnes. I don't think that I have ever been in a lawsuit, and I have been practicing law for about twenty-four years, where the injuries were anything like the injuries this woman has suffered * * *." Defendant's counsel objected on the ground that plaintiffs' counsel was testifying "as to a matter of himself * * * and what he just said is testimony." Whereupon,

the court admonished the jury that argument of counsel for the parties "is not evidence, nor is it to be considered as evidence; but their comments only; and your verdict is to be based on the evidence you heard from the witness stand and as it is applied under the law. Anything beyond that record will be stricken." Counsel for both parties, plaintiffs and defendant, excepted. Plaintiffs' counsel then went on to say, "Well, I say, these are as bad, if not the worst injuries that I have ever seen any woman come into Circuit Court of Scott County and ask for some relief at the hands of a jury. I don't know of anyone that I have known that has had any expense that would amount to the amount of doctor and hospital bills that Clyde Barnes has been called upon to pay out, and the other expenses he has been put to as a result of this car leaving the highway and overturning."

It is noted that the trial judge did not actually sustain the objection made by defendant's counsel and did not directly and unequivocally instruct the jury to disregard what plaintiffs' counsel had said, and defendant herein contends that the argument was a flagrant violation of rules relating to jury argument, and that the "unforceful ruling" of the trial court did not purge the prejudice of the impropriety.

Defendant further complains that in opening argument plaintiffs' counsel did not discuss with the jury the nature and extent of plaintiff's injuries and did not allude to the issue of damages (except as we have noted supra); that defendant's counsel in argument did not mention the subject of damages, since plaintiffs' counsel had not discussed the subject in the opening argument; and that, in closing argument, plaintiffs' counsel argued "damages and defendant objected and was overruled." Defendant says that permitting such out-of-order, forensic procedure is grossly unfair to a defendant.

It is unnecessary to prolong this opinion by analyzing and deciding the contentions made as to these matters of argument. It is sufficient to say that these matters pertained to the issue of damages. In defendant's "points relied on" set forth in her brief there is no allegation or assignment of excessiveness of the jury's award, and no argument is made that plaintiffs' injuries and loss, in nature and extent, did not justify the awards as made by the jury. Any assignment in defendant's motion for a new trial that the award of damages was excessive was abandoned. Henry v. Illinois Cent. R. Co., 319 Mo. 432, 3 S.W.2d 1004. And whatever impropriety in the argument or in its procedural order and whatever errors in or inadequacy of the trial court's rulings, there is nothing which demonstrates the argument and rulings affected the issue of liability; and, as we have said, defendant has not here raised the question and does not here complain of the amount of the awards, so it should not be held that defendant may now say the argument and rulings thereon prejudicially affected the issue of damages. Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.